WILLIAM WENHAM v. STATE OF NEBRASKA.

FILED JULY 1, 1902. No. 12,499.

Commissioner's opinion, Department No. 2.

1. **Employment of Females: REGULATION: TITLE OF ACT: ONE SUBJECT.** The act of the legislature approved March 31, 1899, "To regulate and limit the hours of employment of females in manufacturing, mechanical and mercantile establishments, hotels and

restaurants; to provide for its enforcement and a penalty for its violation," contains but one subject, and in its terms is no broader than its title, in which its subject is clearly expressed.

2. **Amendment:** COMPLETE ACT. Such law does not amend the act of 1883 to protect the health of female employees in stores, offices and schools. It is an act complete in itself, and is not repugnant to the provisions of section 11, article 3, of the constitution.

3. **Class Legislation.** The law as expressed therein has a uniform and general application to all women employed in the establishments described therein, and is not class legislation, within the meaning of section 15, article 3, of the constitution.

4. **Right to Contract:** POLICE POWER: DUE PROCESS OF LAW: CONSTITUTION. The act, in effect, is only a fair and reasonable exercise of the police power. It does not deprive any citizen of his property, or the reasonable use thereof, without due process of law. It does not prohibit the right of contract. It merely regulates the same in a reasonable manner. It is therefore not in conflict with the constitution, and is in all things valid.

ERROR from the district court for Douglas county. Tried below before BAKER, J. *Affirmed.*

*A. W. Jefferis* and *James W. Carr,* for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown, George W. Shields* and *Lysle J. Abbott,* for the state.

BARNES, C.

The county attorney of Douglas county on the 18th day of May, 1901, filed a complaint in the district court of that county against William Wenham, charging him with the violation of sections 1 and 2 of the act of the legislature of this state approved March 31, 1899, and entitled "An act to regulate and limit the hours of employment of females in manufacturing, mechanical and mercantile establishments, hotels and restaurants; to provide for its enforcement and a penalty for its violation." Session Laws, 1899, ch. 107. It was charged in the complaint that the defendant, Wenham, as the employer of

female persons in a mechanical establishment, to wit, the Nonpareil Steam Laundry, situated in the city of Omaha, did then and there unlawfully employ a female person, to wit, Lizzie Falconer, for a period of more than sixty hours during each of the several weeks included between the first day of January, 1901, and the 20th day of February of that year, for more than ten hours during each of the said days, to wit, for fourteen hours per day and for eighty-four hours per week during all of said time. There was a second count, which also charged him with a violation of the second section of the act, which provides for the posting of printed notices stating the number of hours' work required by each female employed in such establishment. A trial was had upon said complaint, and the jury found the defendant guilty on both counts. The court, however, dismissed the action as to the second count, leaving the verdict of guilty standing as to the first count, which charged a violation of the first section of the act in question. Defendant's motion for a new trial was overruled, and the court sentenced him to pay a fine of $25, and costs, and awarded execution against his property for the collection thereof. From this judgment he prosecuted error to this court, and now contends that the judgment of the court below should be reversed for the reason that the law under which he was prosecuted and convicted is unconstitutional and void. The act in question is as follows:

"Sec. 1. That no female shall be employed in any manufacturing, mechanical or mercantile establishments, hotel or restaurant in this state more than sixty hours during any one week and that ten hours shall constitute a day's labor. The hours of each day may be so arranged as to permit the employment of such females at any time from six o'clock A. M. to ten o'clock P. M.; but in no case shall such employment exceed ten hours in any one day.

"Sec. 2. Every such employer shall post in a con-spicuous place in every room where such females are

employed, a printed notice, stating the number of hours' work required of them each day of the week, the hours of commencing and stopping such work and the hours when the time or times allowed for dinner or for other meals begins and ends. Printed forms of said notice shall be furnished by the deputy labor commissioner, and the form of such notice approved by the attorney general of this state.

"Sec. 3. Every such employer in such establishment, shall provide suitable seats for the females so employed, and shall permit the use of such seats by them when they are not necessarily engaged in the active duties for which they are employed.

"Sec. 4. Any employer, overseer, superintendent or other agents of any such employer who shall violate any of the provisions of this act, shall be fined for each offense in a sum not less than twenty dollars nor more than fifty dollars; and it is hereby made the duty of the deputy labor commissioner to enforce the provisions of this act; Provided, however, that nothing in this act shall be construed to prevent any other person from enforcing its provisions."

We approach this question with some reluctance and considerable hesitation. The popularity and strength of government in this country, both national and state, is based largely upon the fact of the division of governmental power into three separate and independent departments. To the legislature is committed the power to enact laws for the government and welfare of our people, to the executive department is delegated the power to see that such laws are properly executed, and to the judiciary is confined the power to interpret them, and finally, as a last resort, to decide the question of their constitutionality. Courts should never usurp legislative functions, and before declaring a law unconstitutional we should be fully convinced that it clearly conflicts with some provision of the fundamental law,—some clause of the constitution, either national or state. If, after a careful

consideration of the question in all of its bearings, the matter is left in doubt, we should resolve such doubt in favor of the law, and declare it valid. With these principles in view we come now to consider the questions involved in this proceeding.

1. Plaintiff in error contends that the act is void because it is in conflict with section 11, article 3, of the constitution of this state, wherein it is provided that no bill shall contain more than one subject, and the same shall be clearly expressed in its title. It is urged that the title to the act in no manner indicates that it was intended as a police regulation, or that it was enacted for the purpose of protecting the health of the public. It is further urged that the first subject contained in the act is the number of hours that certain designated persons are permitted to employ females during the week; that the second subject is the posting of notices; that the third imposes a duty upon the labor commissioner to furnish notices; that the fourth is the duty imposed upon the attorney general to approve the form thereof; that the fifth subject is the providing of seats for females, employed in these establishments, when they are not working; that the sixth subject is the duty of the labor commissioner to enforce the provisions of the act; and that the seventh is the penalty of the act. We do not so understand this question. The subject of the act, which is clearly expressed in the title, is to regulate and limit the hours of employment of females in manufacturing, mechanical and mercantile establishments, hotels and restaurants. The body of the act is no broader than the title, so far as that portion of it is concerned. The second section of the act simply provides the means of its enforcement, and there is nothing in that section but what may reasonably be enacted under that portion of the title. If it be contended that the third section of the act is not covered by the title, we may reject that section entirely, and the act is still complete in its terms, capable of enforcement, and should be declared valid. *State v. Stuht,*

52 Nebr., 399. The fourth section provides for the penalty, and designates who may enforce it. We therefore hold that the act is no broader than the title; that it contains but one general subject, and so far as this contention is concerned, it is constitutional. *Kansas C. & O. R. Co. v. Frey,* 30 Nebr. 790.

2. It is claimed that the act in question is unconstitutional because it violates that portion of section 11, article 3, above mentioned, which provides that "no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." It is insisted on the argument and in the brief of the plaintiff in error, that the act in question amends the act of 1883, approved February 7th, of that year, entitled "An act to protect the health of female employees," now known and designated as sections 245o and 245p of the Criminal Code, as found in the Compiled Statutes of 1901. An examination of the provisions of these sections shows us that the purpose of the act of 1883 was to protect the health of female employees in stores, offices or schools within this state, while the act in question is designed to regulate and limit the hours of employment of females in manufacturing, mechanical and mercantile establishments, hotels and restaurants. These acts are in no manner in conflict with each other. They were not passed for the same purpose, and do not apply to female help in the same or like kinds of institutions. The act in question in no manner amends the act of 1883. It does not purport to amend it, but on the other hand, is a complete and independent act within itself, passed for another and entirely different purpose. We hold that it is not amendatory of the act of 1883, and does not have the effect of amending it; that so far as this objection is concerned, it is valid and should be enforced by the courts. *Bryant v. Dakota County,* 53 Nebr., 755.

3. The plaintiff insists that the act in question is unconstitutional because it is special or class legislation,

and conflicts with the provisions of section 15, article 3, of the constitution of this state. In the case of *State v. Graham,* 16 Nebr., 74, it was held that "the classification of the cities of the state into classes and subclasses, and conferring upon them of corporate powers by acts of the legislature, of a general nature, yet the provisions of which are applicable to but one of such classes or subclasses, is not repugnant to any provision of the constitution." In *McClay v. City of Lincoln,* 32 Nebr., 412, this court made use of the following language: "The provisions of section 36, chapter 13[a], Compiled Statutes, that no appeal bond shall be required of the city by any court in any action appealed by the city, *held,* not repugnant to section 15, article 3, of the constitution." In *State v. Robinson,* 35 Nebr., 401, it was held that "a law which is general and uniform throughout the state and operates alike upon all persons or localities which come within the relations and circumstances provided for, is not objectionable to the constitution, or wanting in uniformity." In *State v. Berka,* 20 Nebr., 375, the court said: "A law which is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are brought within the relations and circumstances provided for, is not objectionable as wanting uniformity of operation." The act in question applies to all women who may be employed in the occupations mentioned therein, and wherein is required continuous physical exertion. No discrimination is made on account of age, condition or situation. The law applies alike to all women who shall engage in labor in any of the establishments mentioned therein. We hold that the act is not class legislation within the meaning of section 15, article 3, of the constitution.

4. It is the further contention of the plaintiff that this law is repugnant to and in conflict with sections 1 and 3 of article 1 of our Bill of Rights, which are in effect the same as the Fourteenth Amendment to the Constitution of the United States. These sections are as follows:

Section 1. "All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty, and the pursuit of happiness. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed."

Section 3. "No person shall be deprived of life, liberty or property, without due process of law."

We appreciate the gravity of these questions, and concede that great care should be exercised in their solution. The questions involved in this inquiry are so closely connected that the authorities upon each apply, at least to some extent, to the others, therefore we will consider them together. It may well be contended that plaintiff's business is property, and that the ability of the women who may be employed by him to labor, is also property. It is the means by which they earn their living, and perhaps contribute to the help of indigent ones who may be dependent upon them in whole or in part, for support. It would seem at first blush as though a law having the effect to interfere with the business of the one, or shorten the hours of labor of the other, would be repugnant to these constitutional provisions. It must be conceded, however, that every property holder is secured in his title thereto and holds it under the implied rule and understanding that its use may be so regulated and restricted that it shall not be injurious to the equal enjoyment of others having the equal right to the enjoyment of their property, or to the rights of the community in which he lives. All property in this state is held subject to rules regulating the common good and the general welfare of our people. This is the price of our advanced civilization, and of the protection afforded by law to the right of ownership and the use and enjoyment of the property itself. Rights of property, like other social and conventional rights, are subject to reasonable limitations in their enjoyment, and to such reasonable restraints and regula-

33

tions by law as the legislature, under the governing and controlling power vested in them by the constitution, may think expedient. This power, legitimately exercised, can not be 'limited by contract, nor bartered away by legislation. It is a power that is necessarily inherent in every form of government. This inherent power, reasonably used, may be said to be due process of law. There are few decisions which define the meaning of this term. In the case of *Walker v. Sauvinet*, 92 U. S., 90, 93, Chief Justice Waite said : "Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state." Certain profitable employments, such as the sale of intoxicating liquors and the carrying on of lotteries, once considered to be legitimate, have fallen under the ban of public opinion, and are either altogether prohibited, or made subject to stringent police regulations. The power to do this has been so repeatedly affirmed by the courts of this country, both national and state, that the right to so regulate these occupations is no 'longer an open question. The right of contract itself is subject to certain limitations which the state may lawfully impose in the exercise of its police power, and this power has been greatly expanded in its application during the past century, owing to the enormous increase in the number of occupations which are dangerous, or so far detrimental to the health of the employees therein as to require special protection for their well-being. The police power of the state can not be put forward as an excuse for oppressive and unjust legislation, but it may be lawfully resorted to for the purpose of preserving the public health, safety or morals; and a large discretion is vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. In the state of Pennsylvania laws passed for the protection of operatives in the coal mines of that state have been upheld. In *Daniels v. Hilgard*, 77 Ill., 640, it was held that the legislature had power, under the constitution,

to establish reasonable police regulations for the opening of mines and collieries, and that an act providing for the health and safety of persons employed in coal mines, which required the owner or agent of every coal mine or colliery employing ten men or more to make or cause to be made an accurate map or plan of the workings of such coal mine or colliery, was not unconstitutional; that the question whether certain requirements are a part of the system of police regulations adapted to aid in the protection of life and health was properly one of legislative determination, and that a court should not lightly interfere with such determination unless the legislature had manifestly transcended its province. In *Commonwealth v. Bonnell,* 8 Phila. (Pa.), 534, a law providing for the ventilation of coal mines, for speaking tubes and the protection of cages, was held to be constitutional and subject to strict enforcement. In the case of *Commonwealth v. Hamilton Mfg. Co.,* 120 Mass., 383, it was held that a statute prohibiting the employment of all persons under the age of eighteen, and all women from laboring in any manufacturing establishment more than sixty hours per week, violates no contract of the commonwealth implied in the granting of a charter to a manufacturing company, nor any right reserved under the constitution to any individual citizen, and may be maintained as a health or police regulation. The act in question was taken from and is practically an enactment of the statute of Massachusetts, and we may fairly presume that our legislature, in adopting this act, also adopted the law relating to it, as announced by the supreme judicial tribunal of that state.* In many of the states laws have been enacted limiting the hours during which women and children shall be employed in factories. While in some of the states the constitutionality of these laws, as applied to women, has been doubted, yet in most of them they have been upheld. The legislature of the state of Utah enacted a law which provided that miners work-

*See *Morgan v. State,* 51 Nebr., 672.

ing underground should not be employed for a period
of longer than eight hours each day, except in case of
emergency, where life or property was in imminent danger;
that the period of employment for workingmen in smelters,
and all other institutions for the reduction and the
refining of ores or metals should be eight hours a day,
except in such cases of emergency. The supreme court
of that state sustained the law. *State v. Holden,* 46 Pac.
Rep., 1105; *Holden v. Hardy,* 46 Pac. Rep., 756. In the
case of *State v. Holden, supra,* Holden was convicted of a
violation of the law, and sentenced to a fine and imprison-
ment. On a proceeding in *habeas corpus* the supreme court
of Utah refused to release him, and he thereupon prose-
cuted error to the supreme court of the United States.
The judgment of the state court was affirmed upon the
express ground that the police power of the state could
be lawfully resorted to for the purpose of preserving the
public health, safety or morals. In *Holden v. Hardy,* 169
U. S., 366, 392, Mr. Justice Brown wrote the opinion, in
which many cases are cited and commented on relating
to questions of this kind, both for and against the validity
of the law. In his opinion, which is an able one, Justice
Brown said that a large discretion was necessarily vested
in the legislature to determine, not only what the interests
of the public required, but what measures were necessary
for the protection of such interests.

The members of the legislature come from no particular
class. They are elected from every portion of the state,
and come from every avocation and from all the walks
of life. They have observed the conditions with which
they are surrounded, and know from experience what
laws are necessary to be enacted for the welfare of the
communities in which they reside. They determined that
the law in question was necessary for the public good,
and the protection of the health and well-being of women
engaged in labor in the establishments mentioned in the
act. That question was one exclusively within their power
and jurisdiction and their action should not be interfered

with by the courts, unless their power has been improperly or oppressively exercised. Women and children have always, to a certain extent, been wards of the state. Women in recent years have been partly emancipated from their common-law disabilities. They now have a limited right to contract. They may own property, real and personal, in their own right, and may engage in business on their own account. But they have no voice in the enactment of the laws by which they are governed, and can take no part in municipal affairs. They are unable, by reason of their physical limitations, to endure the same hours of exhaustive labor as may be endured by adult males. Certain kinds of work which may be performed by men without injury to their health, would wreck the constitutions and destroy the health of women, and render them incapable of bearing their share of the burdens of the family and the home. The state must be accorded the right to guard and protect women, as a class, against such a condition; and the law in question, to that extent, conserves the public health and welfare. On the question of the right to contract, we may well declare a law unconstitutional which interferes with or abridges the right of adult males to contract with each other in any of the business affairs or vocations of life. The employer and the laborer are practically on an equal footing, but these observations do not apply to women and children. Of the many vocations in this country, comparatively few are open to women. Their field of remunerative labor is restricted. Competition for places therein, is necessarily great. The desire for place, and in many instances the necessity of obtaining employment, would subject them to hardships and exactions which they would not otherwise endure. The employer who seeks to obtain the most hours of labor, for the least wages, has such an advantage over them that the wisdom of the law, for their protection, can not well be questioned. No doubt, these considerations were the moving cause for the passage of the law in question. If the act is the result of a fair,

reasonable exercise of police power, it should be upheld.
By the general police power of the state, persons and
property are subjected to many restraints and burdens
in order to secure the general comfort, health and pros-
perity of the state. The perfect right of the legislature
to so exercise such power has never been questioned, where
it was reasonably exercised. *Thorpe v. Rutland & B. R. Co.*,
27 Vt., 140. We are unable to find a case where the courts
have laid down any rigid rule for the exercise of police
power. There is little reason, under our system of govern-
ment, for placing a narrow interpretation on this power,
or restricting its scope, so as to hamper the legislature in
dealing with the varying necessities of society and new
circumstances as they arise, calling for legislative inter-
vention in the public interest. The moment the police
power is destroyed or curbed by fixed or rigid rules, a
danger will be introduced into our system which would
be far greater than the results arising from an occasional
mistake by legislative bodies in exercising such power.
Public laundries have often been recognized by the courts
as subject to control and regulation under the police
power of the state. In *Barbier v. Connolly*, 113 U. S., 27,
it was held that an ordinance which provided that the
owners of a laundry were subject to punishment if they
operated their establishments during certain hours of
the night was valid. In *Soon Hing v. Crowley*, 113 U. S.,
703, it was held that a municipality, under its police
power, had the right to limit the hours of labor in a
laundry. *In re Morgan*, 47 L. R. A. [Colo.], 52, is the
leading authority presented for our consideration by the
plaintiff in error. In that case it was decided that an
act limiting the hours of labor for adult males in under-
ground mines and smelters in the state of Colorado, was
unconstitutional. Mr. Justice Campbell, who delivered
the opinion of the court, speaking of the Massachusetts
case, made use, page 60, of the following language: "This
enactment, under some authorities, might be held valid,
applying, as it does, only to women and minors, since

the former class, on account of sex and supposed physical infirmities, and the latter because of their tender age, are under guardianship of the state, and, not standing on an equality with adult men, are subjects of restraining regulations." It will be observed that this case recognizes the correctness of the decisions which hold that laws like the one in question herein, are constitutional. We find, upon an exhaustive examination of the authorities, that wherever this direct question has been involved, the constitutionality of the law has been upheld. The law in question does not destroy the right of contract. Its effect is to reasonably regulate such right, so far as it relates to the labor of women in the establishments mentioned therein. It does not deprive the plaintiff of his property without due process of law. It does not take his property at all, and does not unreasonably interfere with its use and enjoyment. By employing two sets of laborers he may operate his plant continuously, day and night.

We hold that the legislature, in passing this law, did not exceed the fair and reasonable exercise of its police power, and the act in question is not repugnant to the provisions of the constitution. We therefore recommend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.