[No. 4235. Decided September 9, 1902.]

THE STATE OF WASHINGTON, *Appellant,* v. A. G. BU-
CHANAN, *Respondent.*

CONSTITUTIONAL LAW—LIBERTY OF CONTRACT—REGULATION OF HOURS
OF EMPLOYMENT OF FEMALES.

The act of 1901 regulating and limiting the hours of employ-
ment of females in any mechanical or mercantile establishment

(Laws 1901, p. 118), by forbidding their employment for more than ten hours during any day, is a legitimate exercise of the police power of the state, enacted for the welfare of society at large, and therefore constitutional, although a restriction to some extent upon the right of women to contract their labor. (*Seattle v. Smyth*, 22 Wash. 327, distinguished.)

Appeal from Superior Court, King County.—Hon. ARTHUR E. GRIFFIN, Judge. Reversed.

*Walter S. Fulton,* Prosecuting Attorney, for the State.

*Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This case involves the constitutionality of a law enacted by the legislature of 1901 (Session Laws, p. 118), entitled "An act to regulate and limit the hours of employment of females in any mechanical or mercantile establishment, laundry, hotel and restaurant; to provide for its enforcement and a penalty for its violation." Section 1, the subject of this discussion, is as follows:

"That no female shall be employed in any mechanical or mercantile establishment, laundry, hotel or restaurant in this state more than ten hours during any day. The hours of work may be so arranged as to permit the employment of females at any time so that they shall not work more than ten hours during the twenty-four."

Section 3 provides that:

"Any employer, overseer, superintendent, or other agent of any such employer who shall violate any of the provisions of this act, shall, upon conviction, be fined" etc.

The information charged, in substance, the violation of this law. To this information a demurrer was interposed upon the ground that no offense was charged, which demurrer was sustained by the court. From such ruling and the judgment following, this appeal is taken.

This act cannot be held to be special legislation, and, if it is obnoxious to the constitution at all, it is so because it is an arbitrary restriction upon the fundamental right of the citizen (a woman in this case) to contract her labor, thereby violating § 3 of article 1 of the state constitution, which provides that no person shall be deprived of life, liberty, or property without due process of law. It may be conceded without discussion that a citizen's right to contract his or her labor is a valuable property right, which cannot be restricted by the legislature, unless such restriction is necessary in the proper exercise of the police power of the state. Courts and law-writers have found it difficult to furnish an exact definition of the term "police power," or to define its boundaries, and no other subject has been the source of so much important and earnestly contested litigation, for the citizen is jealous of what he considers to be his inalienable rights, and strenuously resists any encroachment upon his liberty; while the state, with its solicitude for the welfare of society at large, frequently finds it necessary—or at least thinks it does—to lay a restraining hand upon what is deemed by the citizen his private rights. Blackstone's definition of this power is, "the due regulation and domestic order of the kingdom, whereby the inhabitants of the state, like members of a well governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations." It has also been defined as a general system of precaution for the prevention either of crime or of calamities. It has been said to be the great power of necessity in the administration of governmental affairs. It is, in short, that power which enables the state to promote and protect the health, welfare, and safety of society; and it is essential to the very existence of govern-

ment that all property should be held subject to such reasonable limitations and restraints in its enjoyment as will preclude it from acting injuriously upon the public welfare. Conceding that an arbitrary exercise of the legislative will, which, under the guise of a police power, restricts constitutional rights, cannot be maintained, we are of the opinion that the act in question was a legitimate exercise of the police power of the state, enacted for the welfare of society at large, and is therefore constitutional.

On this subject the authorities are somewhat divided, though we think the great weight of modern authority sustains statutes similar to the one under consideration. The case of *Seattle v. Smyth*, 22 Wash. 327 (60 Pac. 1120, 79 Am. St. Rep. 939), is cited to sustain the theory of the unconstitutionality of this act. That was a *per curiam* opinion, without any discussion of the principles involved, and, while it cited with commendation the case of *In re Morgan*, 26 Colo. 415 (58 Pac. 1071, 47 L. R. A. 52, 77 Am. St. Rep. 269), on the subject under discussion, the real point decided in *Seattle v. Smyth* was that an ordinance which makes it unlawful for any contractor upon any of the public works of the state to require or permit any day laborer or mechanic to work more than eight hours in any one calendar day was unconstitutional, on the ground that it interfered with the right of persons to contract with reference to their services. We think that all authority sustains this doctrine; but that and similar cases are not in point here, although the case cited, viz., *In re Morgan, supra,* did hold that a statute of the character under discussion here was unconstitutional, on the ground that the police power could not extend beyond cases where the injury was sustained by the public, and not by the individual in question. While this proposition, in the abstract, is probably true, it is not practically stated, for

practically under our system of government no one citizen stands segregated entirely from the citizens at large, but that which has a deleterious effect on one citizen to some extent deleteriously affects others. In any event, this court in *Ah Lim v. Territory,* 1 Wash. 156 (24 Pac. 588, 9 L. R. A. 395), took the opposite view on that question from the Colorado court. Ah Lim was indicted for violating a statute which provided that any person or persons who shall smoke or inhale opium shall be deemed guilty of a misdemeanor, and it was contended that, inasmuch as the bad effects, if any, of such an indulgence, were visited only upon the person who inhaled or smoked the opium, it was not within the police power of the state to prohibit such smoking or inhaling, on the ground that it was interfering with inalienable rights,—the right that every man had to do what he would with his own which would not interfere with the reciprocal rights of others. In that case no special constitutional limitation or inhibition was pointed out with which the law was in conflict. The contention was based upon the broad ground that the right to liberty and the pursuit of happiness was violated, and this court held that whether the habit was detrimental to either the moral, mental, or physical well being of one of its citizens to such an extent that he was liable to become a burden upon society was a question to be put on foot by the legislature, and a question to be determined by the legislature; and that, granting that it was a proper subject for legislative enactment and inquiry, no limit or control could be placed on the legislative discretion. In *Ritchie v. People,* 155 Ill. 98 (40 N. E. 454, 20 L. R. A. 79, 46 Am. St. Rep. 315) it was held that an act prohibiting the employment of females in any factory or workshop for more than eight hours a day was unconstitutional, as it was an arbitrary restriction upon the fundamental right of the

citizen to control his or her own time and faculties, and a substitution of the legislative judgment for that of the employer and employee in a matter about which they were competent to agree with each other. This is the only case cited to us, or that we have been able to find, in which an act of this kind is decided to be unconstitutional by a court of last resort. But we are not inclined to follow the reasoning of the court in that case, although it is well considered and ably presented. But some of the cases that it cites to sustain the contention that the law was invalid do not seem to us to bear out the contention. For instance, *Ex parte Kuback,* 85 Cal. 274 (24 Pac. 737, 9 L. R. A. 482, 20 Am. St. Rep. 226) where it was held, as it is universally held, that an ordinance making it a misdemeanor for any contractor to employ any person to work more than eight hours a day, where the work was to be performed under any contract with the city, was unconstitutional. The court in that case specially distinguished this kind of a case when it said:

"If the services to be performed were unlawful or against public policy, or the employment was such as might be unfit for certain persons, as, for example, females or infants, the ordinance might be upheld as a sanitary or police regulation."

In referring to the case of *Ah Lim v. Territory, supra,* it was said by the Illinois court:

"Laws restraining the sale and use of opium and intoxicating liquor have been sustained as valid under the police power. Undoubtedly, the public health, welfare and safety may be endangered by the general use of opium and intoxicating drinks. But it cannot be said that the same consequences are likely to flow from the manufacture of clothing, wearing apparel and other similar articles."

It must be borne in mind that Ah Lim was not indicted for procuring others to smoke opium, but for smoking

himself, and we hardly see how the question of what the consequences would be from the manufacture of clothing or wearing apparel could affect the question of prohibiting the employment of females in the factory or workshop where these articles were made. The statute was enacted, not because the manufacture of clothing or wearing apparel had any bad effect upon society, but because the employment of women for more than eight hours a day in that character of work would have a deleterious effect upon the employees, and in a degree upon society. In opposition to the doctrine announced in *Ritchie v. People,* it was held by the supreme court of Massachusetts in *Commonwealth v. Hamilton Mfg. Co.,* 120 Mass. 383, that a statute prohibiting the employment of women laboring in any manufacturing establishment more than sixty hours per week violated no right preserved under the constitution to any individual citizen, and that such an act could be maintained as a health or police regulation. That case is directly in point and was favorably referred to by the supreme court of the United States in *Holden v. Hardy,* 169 U. S. 366 (18 Sup. Ct. 383), a case which came up from Utah, where it was held by the state court and affirmed by the supreme court of the United States that a statute limiting the period of employment of workmen in underground mines or refining of metals to eight hours a day, and making its violation a misdemeanor, was a valid exercise of the police power of the state. This case is in direct conflict with the doctrine announced in the case of *Ritchie v. People, supra,* and *In re Morgan, supra,* and, if not binding upon this court, should have great weight, for the reason that the constitutional right which is claimed to have been infringed by this act is identical with the provision in the fourteenth amendment to the constitution of the United States, viz., that no state shall deprive any

person of life, liberty, or property without due process of law. The rule is announced by Parker & Worthington on Public Health & Safety, p. 299, as follows:

"The state may forbid certain classes of persons being employed in occupations which their age, sex or health renders unsuitable for them, as women and young children are sometimes forbidden to be employed in mines and certain kinds of factories. And statutes are perfectly valid which provide that women or minors shall not be employed in laboring by any person, in any manufacturing establishment, more than a certain number of hours in any one day, with reasonable exceptions. Of such laws it has been said, that they do not violate any constitutional rights."

Mr. Cooley, in his Constitutional Limitations (6th ed.), p. 744, says:

"The general rule undoubtedly is, that any person is at liberty to pursue any lawful calling, and to do so in his own way, not encroaching upon the rights of others. This general right cannot be taken away. It is not competent, therefore, to forbid any person or class of persons, whether citizens or resident aliens, offering their services in lawful business, or to subject others to penalties for employing them. But here, as elsewhere, it is proper to recognize distinctions that exist in the nature of things, and under some circumstances to inhibit employments to some one class while leaving them open to others. Some employments, for example, may be admissible for males and improper for females, and regulations recognizing the impropriety and forbidding women engaging in them would be open to no reasonable objection."

*Ritchie v. People,* noted approvingly *In re Jacobs,* 98 N. Y. 98, (50 Am. Rep. 636), where it is said:

"When a health law is challenged in the courts as unconstitutional on the ground that it arbitrarily interferes with personal liberty and private property without due process of law, the courts must be able to see that it has at

39—29 Wash.

least in fact some relation to the public health, that the public health is the end actually aimed at, and that it is appropriate and adapted to that end."

Accepting this statement of the law, we think it is easily ascertainable from a perusal of this act that its object was the public health, and that its provisions were appropriate, and adapted to that end.    It is a matter of universal knowledge with all reasonably intelligent people of the present age that continuous standing on the feet by women for a great many consecutive hours is deleterious to their health.    It must logically follow that that which would deleteriously affect any great number of women who are the mothers of succeeding generations must necessarily affect the public welfare and the public morals.    Law is, or ought to be, a progressive science.    While the principles of justice are immutable, changing conditions of society and the evolution of employment make a change in the application of principles absolutely necessary to an intelligent administration of government.    In the early history of the law, when employments were few and simple, the relative conditions of the citizen and the state were different, and many employments and uses which were then considered inalienable rights have since, from the very necessity of changed conditions, been subjected to legislative control, restriction, and restraint.    This all flows from the old announcement made by Blackstone that when man enters into society, as a compensation for the protection which society gives to him, he must yield up some of his natural rights, and, as the responsibilities of the government increase, and a greater degree of protection is afforded to the citizen, the recompense is the yielding of more individual rights.    Transportation companies are now controlled and restricted, where a few years ago they claimed the right to transact their business exactly as it

suited their private interests.   The practice of medicine
is restricted and controlled; laws against quackery and
empiricism are enforced without question.    The sale of
liquor, which formerly was a legitimate business, and
which the citizen had a right to enter into, as he did any
other business, without any restrictions, has now become
subject to the control of the state, or to actual prohibition
at the will of the state.    The changing conditions of society
have made an imperative call upon the state for the exer-
cise of these additional powers, and the welfare of society
demands that the state should assume these powers, and it
is the duty of the court to sustain them whenever it is
found that they are based upon the idea of the promotion
and protection of society.

We think no constitutional right is invaded by this law,
and the case will be reversed, with instructions to overrule
the demurrer to the complaint.

REAVIS, C. J., and ANDERS, MOUNT, FULLERTON, HAD-
LEY and WHITE, JJ., concur.