## IN RE ALGOE.

FILED SEPTEMBER 20, 1905. No. 14,337.

Constitutional Law. The subject of chapter 93, laws 1901, which provides penalties for blackmail, extortion and kindred felonies, is expressed by its title with sufficient clearness to meet the requirements of section 11, article III of the constitution.

APPLICATION of Lillian Algoe for a writ of habeas corpus. *Writ denied.*

*John O. Yeiser,* for applicant.

*Norris Brown, Attorney General,* and *William T. Thompson, contra.*

BARNES, J.

Lillian Algoe was charged in the district court for Douglas county with violating the provisions of section 2, chapter 93, laws 1901, entitled "An act to provide penalties for blackmail, extortion and kindred felonies." To that charge she pleaded guilty, and was sentenced to pay a fine of $250 and the costs of the prosecution, and to stand committed until said fine and costs were paid, or she should be otherwise discharged according to law. In default of payment she was placed in the custody of the sheriff, and was by him confined in the common jail of Douglas county. To regain her liberty, she filed her petition for a writ of habeas corpus in this court. A writ was issued directed to said sheriff, returnable on the 6th day of July, 1905. To said writ the respondent made return, setting forth the foregoing facts as his warrant for her detention, and also a plea of former adjudication. The petitioner demurred to the return, and the cause was thereupon submitted to the court.

Her first and principal contention is that the provisions of the act in question, and especially of the section thereof

under which she was prosecuted, are broader than its title, and violative of that clause of section 11, article III of the constitution, which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." To support this contention counsel cite *State v. Persinger,* 76 Mo. 346. That case clearly announces the principle contended for; but an examination of the act there under consideration discloses that the legislature of Missouri, under the following title: "An act to change the penalty for disturbances of the peace"—not only changed the penalty for that crime, as already defined by the statutes, but also included therein other acts which had not theretofore been declared disorderly conduct, making them a crime and fixing a penalty therefor. The supreme court of Missouri could well say in that case that the title to the act gave no notice that a new definition of what should constitue disorderly conduct was to be given therein. Indeed, by the plain language of the title it clearly appeared that nothing was to be accomplished by the act but a change of penalty for the violation of the provisions of an existing penal statute. It is quite clear that the title to the act in that case was much narrower in its scope than the one in question herein. Therefore we do not feel constrained to follow that decision. The question involved in this controversy has not heretofore, in its present form, been presented to us. But one quite analogous to it was decided in the case of *Granger v. State,* 52 Neb. 352, where we held that a title which read, "An act to punish cattle stealing and to punish persons receiving or buying stolen cattle, and to punish all persons harboring or concealing cattle thieves," was broad enough to embrace provisions defining such crimes and providing a punishment therefor, although there was another statute in existence which defined the crime of cattle stealing. That case was followed and approved in *Ream v. State,* 52 Neb. 727. Again, it appears that this question was before the supreme court of Kansas in *State v. Dunn,* 66 Kan. 483. There the title to the act

was, "An act to punish pickpockets." And it was held to be broad enough to cover a definition of the crime, as well as to provide a punishment therefor. These authorities would seem sufficient to sustain the validity of the section of the act in question. It may also be said that on principle, as well as precedent, we should hold the act in question valid. As was said in *Wenham v. State*, 65 Neb. 397:

"Courts should never usurp legislative functions, and before declaring a law unconstitutional we should be fully convinced that it clearly conflicts with some provision of the fundamental law, some clause of the constitution, either national or state."

The purpose of the clause of our constitution above quoted was to prevent surreptitious legislation; and if the title to an act is sufficiently comprehensive to indicate to the legislature and the public the matters actually embraced therein, it cannot be said to violate that provision of the fundamental law. From the language of the title to the act in question it was to be expected that the legislature would define blackmail and extortion. The meaning of the word "blackmail" is well known and understood, and its definition as it appears in the body of the act is just what we would expect it to be by a glance at its title. Rapalje says: "Blackmail is an extortion of hush money; obtaining value from a person as a condition of refraining from making an accusation against him, or disclosing some secret calculated to operate to his prejudice." And extortion is a synonymous term. The provisions of the act in question are clearly expressed by this definition, and it is not to be believed that the legislature was, or that the public will be, deceived by the title as to what is contained in the body of the act. We are therefore of opinion that the passage of the act was in all respects a valid exercise of legislative power. This view of the case renders it unnecessary for us to determine the effect of the respondent's plea of former adjudication, and we therefore decline to consider it.

For the foregoing reasons, the demurrer to the return to the writ is overruled, the writ is quashed, and the petitioner is remanded to the custody of the respondent.

JUDGMENT ACCORDINGLY.

HOLCOMB, C. J., not sitting.