[No. 9898. Department One. March 26, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRIETTA SOMERVILLE, *Appellant*.[1]

CONSTITUTIONAL LAW—POLICE POWER—HOURS OF SERVICES—REASONABLENESS—EVIDENCE—ADMISSIBILITY. Under Laws of 1911, p. 131, providing that no female shall be employed eight hours during any day in any mechanical or mercantile establishment, laundry, hotel, or restaurant, except in harvesting, packing, curing or canning perishable fruit, vegetables or fish, the unconstitutionality of the act as an arbitrary and unwarranted exercise of the police power cannot be shown by evidence that defendant's factory was sanitary and healthful, the labor of female employees light and harmless, and that they could be employed for nine hours a day without endangering or impairing their health or physical condition; since the courts can look only to the law itself and scientific facts of which it can take judicial notice.

CONSTITUTIONAL LAW—DUE PROCESS—RIGHT TO CONTRACT—FEMALE LABOR—EIGHT-HOUR DAY. Laws of 1911, p. 131, providing that no female shall be employed more than eight hours during any day in any mechanical or mercantile establishment, laundry, hotel, or restaurant, except in harvesting, packing, curing or canning perishable fruit, vegetables or fish, is not unconstitutional as depriving employers and employees in the enumerated callings of their right to contract without due process of law; all doubts being resolved in favor of the validity of the law.

SAME—CLASS LEGISLATION—EQUAL PROTECTION OF THE LAWS. Such act does not violate the constitutional prohibitions against class legislation or deprivation of equal protection of the laws by reason of the exceptions enumerated in the proviso; the classification being within the discretion of the legislature and founded on a reasonable basis.

[1]Reported in 122 Pac. 324.

Appeal from a judgment of the superior court for King county, Main, J., entered September 9, 1911, upon a trial and conviction of employing a woman in violation of the eight hour day law. Affirmed.

*Trefethen & Grinstead,* for appellant.

John F. Murphy, Hugh M. Caldwell, Herbert B. Butler, and Reah M. Whitehead, for respondent.

Crow, J.—The defendant Henrietta Somerville was arrested, tried, convicted, and fined under an information filed by the prosecuting attorney of King county, which omitting formal parts charged as follows:

"She, the said Henrietta Somerville, in the county of King, state of Washington, on the 9th day of June, 1911, being then and there the superintendent of R. S. Somerville and H. K. Somerville, copartners, then and there doing business under the name and style of the 'Washington Paper Box Company,' which said R. S. Somerville and H. K. Somerville, as copartners as aforesaid, then and there owned, conducted and operated under said name 'Washington Paper Box Company,' a certain mechanical and mercantile establishment for the making and selling of paper boxes, did then and there wilfully and unlawfully employ a female, namely, one Mattie Garse, in said establishment more than eight hours, to wit, for a period of nine hours during said day."

From such conviction and the final judgment entered thereon, the defendant has appealed.

Appellant contends that the statute under which she was prosecuted, chapter 37, p. 131, Laws 1911, is unconstitutional. Section 1 of the act reads as follows:

"No female shall be employed in any mechanical or mercantile establishment, laundry, hotel or restaurant in this state more than eight hours during any day. The hours of work may be so arranged as to permit the employment of females at any time so that they shall not work more than eight hours during the twenty-four: *Provided, however,* That the provisions of this section in relation to the hours of employment shall not apply to, nor affect, females employed

in harvesting, packing, curing, canning, or drying any variety of perishable fruit or vegetable, nor to females employed in canning fish or shellfish. . . ."

By stipulation, a jury was waived; and upon trial to the court, it was conceded that the statute if valid had been violated by appellant. For the purpose, however, of showing that the action of the legislature in enacting the law, and in attempting to exercise the police power of the state was unreasonable and arbitrary, and that a maximum limit of eight hours cannot be sustained, appellant introduced evidence which was admitted by the trial judge to aid her in making a record for this court. The evidence thus introduced tended to show that appellant's factory was modern, well-equipped, sanitary and healthful; that the labor performed by the female employees was light and harmless; that they could be thus employed for nine hours per day without endangering or impairing their health or physical condition, and that no sufficient reason existed for a limitation of their labor to eight hours per day. The state introduced no evidence to rebut this showing, its contention then and now being that the evidence was immaterial and irrelevant.

In passing upon the constitutionality of a statute, courts cannot be controlled by evidence of this character. Assuming, without deciding, that the undisputed evidence thus admitted supports appellant's contention as to her factory, and as to all other factories of a like character in this state, with reference to their equipment, sanitary condition, and the labor required of female employees, it might be that in another prosecution for the employment of females in a like factory, less convincing evidence would be produced, or that the state by its evidence might successfully refute the alleged facts upon which appellant relies in this action. Yet it is manifest that a court could not in one prosecution declare the act unconstitutional while sustaining it in the other. Evidence upon which appellant thus relies to sustain her present contention that the statute is an unreasonable,

arbitrary and unwarranted exercise of the police power, might with propriety have been presented to the legislature when it had the act under consideration, but it cannot be controlling or conclusive on the courts when presented as a defense in a criminal prosecution under a statute the constitutionality of which is assailed. Courts in passing upon the reasonableness or unreasonableness of a statute, and deciding whether the legislature has exceeded its powers to such an extent as to render the act invalid, must look at the terms of the act itself, and bring to their assistance such scientific, economic, physical, and other pertinent facts as are common knowledge and of which they can take judicial notice.

Appellant contends that the statute is in contravention of sections 3 and 12, of article 1, of the state constitution, and the fourteenth amendment to the constitution of the United States, in that without due process of law, it deprives employers and employees in the enumerated factories and callings of their right to contract relative to the employees' labor. Labor is property as to which employer and employee may contract. To arbitrarily deprive either of such right to contract would be a violation of the Federal and state constitutions, and when the legislature attempts to restrict such right, the duty devolves upon the courts to determine whether the restrictions are within constitutional limitations. Statutes regulating and restricting hours of labor, and the right of private individuals to contract therefor, when valid are sustained as a proper exercise of the police power, and many courts have held that a large discretion is necessarily vested in the legislature when exercising that power, and that the legislature may determine not only what the public interest demands, but also what measures are requisite and necessary to secure and protect the same. Referring to limitations imposed by a state·upon the hours of workmen and their right to contract therefor, the supreme court of the

21—67 WASH.

United States, in *Holden v. Hardy*, 169 U. S. 366, 391, said:

"This right of contract, however, is itself subject to certain limitations which the state may lawfully impose in the exercise of its police powers. While this power is inherent in all governments, it has doubtless been greatly expanded in its application during the past century, owing to an enormous increase in the number of occupations which are dangerous, or so far detrimental to the health of employees as to demand special precautions for their well-being and protection, or the safety of adjacent property. While this court has held, notably in the cases *Davidson v. New Orleans*, 96 U. S. 97, and *Yick Wo v. Hopkins*, 118 U. S. 356, that the police power cannot be put forward as an excuse for oppressive and unjust legislation, it may be lawfully resorted to for the purpose of preserving the public health, safety or morals, or the abatement of public nuisances, and a large discretion 'is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests.' *Lawton v. Steele*, 152 U. S. 133, 136."

We have before us, then, the question whether in this particular act the legislature has so far exceeded the necessary and reasonable exercise of the police power, in fixing the maximum daily labor at eight hours, as to render the act invalid. Any legislative enactment must be regarded as valid unless it unquestionably and palpably violates some right secured by fundamental law. All doubts as to its validity must be resolved in favor of the statute. Courts are not concerned with questions of the propriety, advisability or wisdom of any statute. Those questions are for the exclusive consideration of the legislature. Legislative functions are not to be usurped by the courts. After we have given the statute a careful consideration in all of its bearings, if we are not clearly convinced that it is unconstitutional, we should resolve all doubts in its favor and sustain it.

The courts have not agreed at all times as to what are reasonable restrictions upon the right of private individuals to

contract for hours of labor, but the later decisions have evinced marked liberality in sustaining legislation of this character. The police power which may be invoked to protect the health, property, welfare, and morals of citizens is an inherent attribute of sovereignty, the exercise of which is necessary to secure good government and promote the public welfare. Circumstances and occasions calling for its exercise have multiplied with marvelous rapidity in recent years, by reason of the well-recognized fact that modern, social and economic conditions have called into existence agencies previously unknown; many of which so vitally affect the health and physical condition of laborers, and especially female laborers, that legislation of the character here involved has been sustained with greater liberality than was formerly evinced under less exacting conditions. In *State v. Buchanan*, 29 Wash. 602, 70 Pac. 52, 92 Am. St. 930, 59 L. R. A. 342, this court sustained, as a legitimate exercise of the police power, an act limiting the employment of females in any mechanical or mercantile establishment, or any laundry, hotel, or restaurant, to ten hours per day. The supreme court of the United States in *Lockner v. New York*, 198 U. S. 45, by a bare majority of the judges, held there was no reasonable ground on the score of health for interfering with the liberty of the person, or the right of free contract, by determining the hours of labor in the occupation of a baker, and that a statute limiting such labor to sixty hours per week or ten hours per day was invalid. In the later case of *Muller v. Oregon*, 208 U. S. 412, the same court unanimously sustained the validity of an act in relation to the hours of labor for women in mechanical establishments, factories, or laundries, limiting the same to ten hours per day. In that case, Mr. Justice Brewer said:

"We held in *Lockner v. New York*, 198 U. S. 45, that a law providing that no laborer shall be required or permitted to work in a bakery more than sixty hours in a week or ten hours in a day was not as to men a legitimate exercise of the

police power of the state, but an unreasonable, unnecessary and arbitrary interference with the right and liberty of the individual to contract in relation to his labor, and as such was in conflict with, and void under, the Federal constitution. That decision is invoked by plaintiff in error as decisive of the question before us. But this assumes that the difference between the sexes does not justify a different rule respecting a restriction of the hours of labor. . . . While there have been but few decisions bearing directly upon the question, the following sustain the constitutionality of such legislation: *Commonwealth v. Hamilton Mfg. Co.*, 120 Mass. 383; *Wenham v. State*, 65 Neb. 394, 400, 406; *State v. Buchanan*, 29 Wash. 602; *Commonwealth v. Beatty*, 15 Pa. Sup. Ct. 5, 17; against them is the case of *Ritchie v. People*, 155 Ill. 98. . . . Constitutional questions, it is true, are not settled by even a consensus of present public opinion, for it is the peculiar value of a written constitution that it places in unchanging form limitations upon legislative action, and thus gives a permanence and stability to popular government which otherwise would be lacking. At the same time, when a question of fact is debated and debatable, and the extent to which a special constitutional limitation goes is affected by the truth in respect to that fact, a widespread and long continued belief concerning it is worthy of consideration. We take judicial cognizance of all matters of general knowledge. It is undoubtedly true, as more than once declared by this court, that the general right to contract in relation to one's business is part of the liberty of the individual, protected by the fourteenth amendment to the Federal constitution; yet it is equally well settled that this liberty is not absolute and extending to all contracts, and that a state may, without conflicting with the provisions of the fourteenth amendment, restrict in many respects the individual's power of contract. Without stopping to discuss at length the extent to which a state may act in this respect, we refer to the following cases in which the question has been considered: *Allgeyer v. Louisiana*, 165 U. S. 578; *Holden v. Hardy*, 169 U. S. 366; *Lockner v. New York*, 198 U. S. 45. That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence is obvious. This is especially true when the burdens of motherhood are upon her. Even when

they are not, by abundant testimony of the medical frater-
nity continuance for a long time on her feet at work, re-
peating this from day to day, tends to injurious effects
upon the body, and as healthy mothers are essential to
vigorous offspring, the physical well-being of women be-
comes an object of public interest and care in order to pre-
serve the strength and vigor of the race. Still again, his-
tory discloses the fact that woman has always been dependent
upon man. He established his control at the outset by su-
perior physical strength, and this control in various forms,
with diminishing intensity, has continued to the present.
As minors, though not to the same extent, she has been
looked upon in the courts as needing especial care that her
rights may be preserved. Education was long denied her,
and while now the doors of the school room are opened and
her opportunities for acquiring knowledge are great, yet
even with that and the consequent increase of capacity for
business affairs it is still true that in the struggle for sub-
sistence she is not an equal competitor with her brother.
Though limitations upon personal and contractual rights
may be removed by legislation, there is that in her disposi-
tion and habits of life which will operate against a full as-
sertion of those rights. She will still be where some legisla-
tion to protect her seems necessary to secure a real equality
of right. Doubtless there are individual exceptions and
there are many respects in which she has an advantage over
him; but looking at it from the viewpoint of the effort to
maintain an independent position in life, she is not upon an
equality. Differentiated by these matters from the other
sex, she is properly placed in a class by herself, and legisla-
tion designed for her protection may be sustained, even when
like legislation is not necessary for men and could not be
sustained. It is impossible to close one's eyes to the fact
that she still looks to her brother and depends upon him.
Even though all restrictions on political, personal and con-
tractual rights were taken away, and she stood, so far as
statutes are concerned, upon an absolutely equal plane with
him, it would still be true that she is so constituted that she
will rest upon and look to him for protection; that her phys-
ical structure and a proper discharge of her maternal func-
tions—having in view not merely her own health, but the
well-being of the race—justify legislation to protect her

from the greed as well as the passion of man. The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long-continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence. This difference justifies a difference in legislation and upholds that which is designed to compensate for some of the burdens which rest upon her."

We have thus quoted at length from the opinion of the learned justice because we think his argument is convincing and unanswerable, and that it supports the validity of the statute now under consideration. While there are other distinctions, we think the only material difference between the statute sustained in *Muller v. Oregon, supra,* and the one now under consideration, is that in the former the maximum limit was ten hours, while in the latter it is eight hours. Yet we cannot say that the limitation of eight hours is so unreasonable or arbitrary as to invalidate the statute. The question of the limitation to be fixed was one resting within the discretion of the legislature. It is common knowledge that a large portion of the working time for labor in this country is by private contract fixed at eight hours per day. It must be presumed that, after careful consideration and inquiry, the legislature concluded that a maximum of eight hours was a reasonable and proper limitation to place upon the work of female laborers in the factories and employments mentioned in the statute, and we are unable to conclude that the limitation thus fixed is unreasonable and arbitrary. Resolving as we must all doubts in favor of the act, we conclude it must be sustained.

Appellant, calling attention to the proviso of the first section of the act, further contends that it violates section 12

of article 1 of the state constitution and the fourteenth amendment of the Federal constitution. The proviso excepts from the operation of the act females employed in harvesting, packing, curing, canning, or drying any variety of perishable fruit or vegetable, and females employed in canning fish or shell fish. Appellant insists that this proviso makes the act arbitrary in its application, and that if the legislature intended to protect female employees in the interest of their health and the public welfare, it could not be permitted to make an exception of these occupations, which appellant contends are especially strenuous and equally injurious. Appellant also questions the motives of the legislature in making these exceptions. We cannot consider their motives. With them we have no concern. The only question before us is whether the classifications made by the statute are reasonable and valid. We think they are. In *State v. McFarland*, 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909, this court said:

"If any such classification can be sustained, it rests entirely within the discretion of the legislature to determine and establish its basis, and its determination when expressed in statutory enactment cannot be questioned successfully, unless it is so manifestly arbitrary, unreasonable, inequitable, and unjust that it will cause an imposition of burdens upon one class to the exclusion of another without reasonable distinction. The legislature, within the limitations of an exercise of a reasonable discretion, is required to base its classification upon some practical consideration suggested by necessity. Any class created by legislative enactment and subjected to the operation of the law must be such as to embrace all persons or corporations in like circumstances or situation. The classification must be practical, reasonable and certain, not factitious, arbitrary, or unjust. To be constitutional it must be predicated upon such a substantial distinction as suggests needed legislation relative to one class as distinguished from another."

See, also, *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504.

It is common knowledge that the particular callings ex-

cluded by the statute now before us must be pursued at certain seasons of the year, and then for brief periods only. Fruits and vegetables that are perishable must be harvested, packed, cured, canned, or dried at the proper seasons. Likewise fish and shell fish can only be taken and canned at certain seasons; whereas in mechanical or mercantile establishments, laundries, hotels, and restaurants, females are employed throughout the entire year. Extra or longer hours of daily labor during a brief season might not have the same tendency to impair health or physical condition. It is manifest that clear, practical, and reasonable distinctions exist as a basis for the classifications created, and that the legislature for good and sufficient reasons in the exercise of its discretion made the exceptions contained in the proviso. This objection to the statute cannot be sustained. 8 Cyc. 1051. *In re Martin,* 157 Cal. 51, 106 Pac. 235, 26 L. R. A. (N. S.) 242; *Wenham v. State,* 65 Neb. 394, 91 N. W. 421, 58 L. R. A. 825; *Mt. Vernon etc. Co. v. Frankfort etc. Ins. Co.,* 111 Md. 561, 75 Atl. 105, 134 Am. St. 636.

We find no sufficient reason for declaring the act unconstitutional. The judgment is affirmed.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.

CHADWICK, J. (concurring)—The proof in this case shows, without contradiction, that the factory conducted by the defendant is clean and wholesome, and is in no way a menace to the health of the employees; and if a correct solution of this particular case depended upon the evidence alone, the act could hardly be sustained. But admitting that the legislature cannot pass a law which arbitrarily and unreasonably impairs the right of contract, it does not follow that courts are at liberty to disregard the legislative will, unless the facts and conditions upon which it bases its judgment are so well understood that they can take judicial notice or knowledge of them. In other words, where the facts depend upon proof, I think it is competent for the legislature to pass

a labor law covering any particular industry, and that the law will be binding upon the courts regardless of the showing that might be made in any particular case. If it were otherwise, we would have a law for "special cases," and we could not depend upon general laws, for the obvious reason that the legislature could not pass a law with any assurance that it would be general in its application.

I have not found the rule to be stated in any of the books exactly as I have stated it, but the difficulty of applying any other rule may be illustrated. For instance, the supreme court of the United States, as well as many of the state courts, has held a law limiting the number of hours an underground miner can work to be constitutional; while the supreme court of Colorado held directly to the contrary. On the other hand, the supreme court of Nebraska has held that, although a law limiting the hours of labor as to men will not be sustained unless health and safety require it, most any kind of a law will be sustained as to women because of her sex and dependent relation. Although varying in statement, this distinction runs through the cases. We find it in the decisions of the supreme court of the United States. *Lockner v. New York, supra,* is an example of the one view, and *Muller v. Oregon, supra,* cited in Judge Crow's opinion, is a type of the other. Authorities almost without number might be referred to. But it is not cases, but the principle to which I would refer, and until the supreme court of the United States decides otherwise, I am willing to hold—for I believe it is the only consistent thing for a court to do—that in all cases pertaining to the police power, the legislature is supreme unless the general application of the law does violence to the common knowledge of men, in which event a court might properly intervene. If there can be a difference of opinion, the judgment of the legislative body must prevail.

I regret that my associates have deemed it necessary to uphold the exception to the law in so far as it relates to

women employed in fruit and vegetable canneries. I have grave doubt as to the validity of this exception. The exception, in so far as it applies to women employed in fish canning establishments, is upon surer ground, and would probably be sustained upon a direct attack. It was unnecessary to hold the exception, or any part of the exception, good in this case, for the defendant can have no interest beyond the body of the law. I am mindful of the legislative direction: "If it shall be adjudicated that the foregoing proviso and exception shall be unconstitutional and invalid for any reason, an adjudication of invalidity of said proviso or any part thereof shall not affect the validity of the act as a whole, nor any part thereof." Under the ordinary rule of interpretation, as we have heretofore understood and applied it, such direction would not be held to influence the court in any way; the rule being that, if the exception were declared invalid, as appellant contends it is, the whole act would be avoided, under the theory that the legislature would not have passed the act without the exception. Yet I see no objection to the legislature changing this rule of interpretation, and saying in terms to the courts that it was its intention to pass a law limiting hours of labor for women, and that it has made the act broad enough to include the excepted class, and if the courts upon consideration of the law find the exception to be without sustaining reason, the whole law shall not be declared bad because of uncertainty as to legislative intent, but the exception shall be regarded as if it had not been written. Although contrary to precedent and practice, the idea seems to me to be a wholesome one, and a right well within the power of the legislature. Granting this power to the legislature, I believe that the exception of women employed in fruit and vegetable canning establishments cannot be sustained, and that they can work eight hours and no more. For the exception, in so far as it refers to them, is based, not upon the health, safety, or welfare of the women employees, but upon the necessities of the employer; that is

to say, if he is engaged in putting up perishable stuff and might lose money by putting on more employees or working them more than the prescribed number of hours, he can violate the law at will. Laws like the one under review are passed and sustained on the theory that they better the condition of human beings. The exception makes the condition (perishability) of the fruit or vegetable the test, rather than the health, welfare, or safety of the employee. The exception is unreasonable and should not have our approval.

I know of no case, and I think none will be found, which would approve the application of the rule of police power in such a case. I concur in the holding of my associates that defendant is within the law, but I would not have sustained the exception in the particular noted. I would hold the law to be general in its application, except in so far as women employed in fish packing establishments are concerned.