CHARLES A. STARNE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 21, 1906.*

1. CONSTITUTIONAL LAW—*Miners' Wash-room act of 1903 is unconstitutional.* The act of 1903, (Laws of 1903, p. 252,) requiring mine owners to provide a wash-room at the top of each mine for the use of the employees, places upon mine owners a burden not borne by other employers of labor and discriminates in favor of mining employees against laborers engaged in other occupations, and is special legislation.

2. SAME—*constitutional provision respecting mining legislation construed.* The provision of the constitution requiring the enactment of laws for the protection of operative miners and for the construction of such appliances as may secure safety in coal mines, was designed only to require the passage of laws protecting the miners against personal injury while in the mine.

3. SAME—*Miners' Wash-room act of 1903 cannot be sustained as a sanitary measure.* The Miners' Wash-room act of 1903 cannot be sustained as a proper exercise of the police power of the legislature to enact sanitary laws, since the legislature cannot ameliorate the condition of coal miners under the guise of an exercise of the police power and leave unaided laborers in other lines of employment who suffer from like causes.

HAND, J., dissenting.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

LAWRENCE & FOLSOM, for plaintiff in error:

The act entitled "An act to require owners and operators of coal mines to provide every coal mine with wash-rooms for the use of the miners therein employed," is class or special legislation. *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *Coal Co.* v. *People,* 147 id. 66.

When an act is not general in its scope and affects only one class or body of citizens it is in conflict with the constitutions of the State of Illinois and of the United States. *Eden* v. *People,* 161 Ill. 296; *Coal Co.* v. *People,* 147 id. 66; *Millett* v. *People,* 117 id. 294; *Frorer* v. *People,* 141 id. 171; *Bailey* v. *People,* 190 id. 28; *Ritchie* v. *People,* 155 id. 98; *Harding* v. *People,* 160 id. 459.

Section 20 of article 4 of the constitution of 1870, enjoining legislation in the interest of miners, authorizes class legislation solely as respects their personal safety. *Millett* v. *People,* 117 Ill. 294.

Police regulations are limited to enactments that promote the health, safety, morals and general welfare of the public. *Ruhstrat* v. *People,* 185 Ill. 133; *Bessette* v. *People,* 193 id. 334; *Chicago* v. *Netcher,* 183 id. 104; *Ritchie* v. *People,* 155 id. 98; *Palmer* v. *Tingle,* 55 Ohio St. 423; *Cleveland* v. *Construction Co.* 59 L. R. A. 775.

What are the subjects of police powers and what are reasonable regulations are judicial questions, and the courts may declare enactments invalid which, under the guise of the police power, go beyond the great principle of securing the safety or welfare of the public. *Booth* v. *People,* 186 Ill. 43; *Bessette* v. *People,* 193 id. 334; *Ritchie* v. *People,* 155 id. 98.

Statutes relying upon the so-called "police power" for their right to enforcement must, either in the title thereof or in the body thereof, indicate the purpose sought to be accom-

plished. *Matter of Jacobs,* 98 N. Y. 109; *People* v. *Gillson,* 109 id. 390; *People* v. *Biesecker,* 58 App. Div. 393.

H. J. HAMLIN, Attorney General, G. B. GILLESPIE, W. E. SHUTT, Jr., State's Attorney, THOMAS WILLIAMSON, and SHUTT & GRAHAM, for the People:

The constitution was intended for the benefit of the people, and should receive a liberal construction. A constitution is not to receive a technical construction, like a common law instrument or a statute. Cooley's Const. Lim. (6th ed.) 72; Endlich on Interp. of Statutes, sec. 526; Black on Interp. of Laws, 13.

Legislative construction of the constitution by passing an act in pursuance of a constitutional provision is given great weight by the courts. *Wulff* v. *Aldrich,* 124 Ill. 591; *Burritt* v. *Comrs. of State Contracts,* 120 id. 322.

The question of what is necessary for protecting persons engaged in coal mining is properly one for legislative determination. The courts will not interfere unless the legislature manifestly transcended its powers in that regard. *Coal Co.* v. *People,* 181 Ill. 270; *Daniels* v. *Hilgard,* 77 id. 640.

There is a strong presumption in favor of legislative acts, and only in case of clear conflict with the constitution will courts declare an act invalid. *People* v. *Peacock,* 92 Ill. 172; *Middleport* v. *Insurance Co.* 82 id. 562; *Robson* v. *Doyle,* 191 id. 566; *Arms* v. *Ayer,* 192 id. 601; *People* v. *Hutchinson,* 172 id. 486.

Before a statute can be set aside as unconstitutional the court must be able to turn to the provision of the constitution which the act contravenes, and the repugnance must be clear and apparent. *Hawthorn* v. *People,* 109 Ill. 302.

Where a law is found upon the statute books the presumption is that it conforms to the constitution and that it is a valid enactment, and the courts will not hold it unconstitutional in case of doubt. To authorize the court to hold a

law unconstitutional its repugnance to the organic law must clearly appear. *People* v. *Thompson,* 155 Ill. 451; *Gaines* v. *Williams,* 146 id. 450; *Hawthorn* v. *People,* 109 id. 303.

The General Assembly of Illinois may, in pursuance of the police power, where not under constitutional prohibition, exercise such restraint upon private rights as may be found necessary and appropriate to promote the health, safety, comfort and welfare of society. *Booth* v. *People,* 186 Ill. 43.

Where the subject is one to which the police power of the State is applicable the legislature may require citizens to expend money in compliance therewith, in order to make use of property belonging to them. *Daniels* v. *Hilgard,* 77 Ill. 640; *Coal Co.* v. *People,* 186 id. 134.

The fact that a law regulates trade or business, or in some degree operates to restrain the same, does not render it obnoxious to any constitutional provisions. The legislature, for the safety, security, welfare and comfort of society, may control the acts of the governed, even as to the time and manner of performing labor and the manner in which persons shall use their property to prevent injury to others. *Hawthorn* v. *People,* 109 Ill. 302.

Where the object of an act is to secure the comfort, welfare and safety of citizens, it must be reasonably adapted to that end. It cannot invade the rights of persons and property under the guise of a police regulation when it is not such in fact. *Ritchie* v. *People,* 155 Ill. 98; *Lake View* v. *Cemetery Co.* 70 id. 191.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

This was a criminal proceeding commenced before a justice of the peace of Sangamon county. The complaint charged the plaintiff in error, the owner and operator of a coal mine in this State, with failing and refusing to provide and maintain a wash-room, as he was required to do by sec-

tion 37 of chapter 93, Hurd's Revised Statutes of 1903, which was approved May 14, 1903, and provides:

"That every owner or operator of a coal mine in this State shall provide and maintain a wash-room at a convenient place at the top of each mine for the use of the miners and other employees of such mine; and such wash-room shall be so arranged that such miners and other employees may hang therein their clothes for the purpose of drying the same."

A judgment of conviction was rendered by the justice and an appeal was taken to the circuit court. A motion was there entered to quash the complaint and dismiss the suit, one of the grounds of the motion being that the act in question was in contravention of the constitution of the State of Illinois. This motion was denied, and, upon trial, plaintiff in error was again convicted, and has sued out of this court a writ of error to review the judgment of conviction.

It is insisted that the statute is unconstitutional. It is apparent, upon inspection thereof, that it places upon mine owners or operators a burden not borne by other employers of labor and is special legislation, and for that reason invalid, unless for some reason it does not fall within the operation of the general rule forbidding legislation of that character. *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *Braceville Coal Co.* v. *People,* 147 id. 66; *Harding* v. *People,* 160 id. 459; *Eden* v. *People,* 161 id. 296; *Bailey* v. *People,* 190 id. 28.

It is said, however, that the miner works at a depth which removes him from all climatic changes and conditions on the surface and in a temperature which, throughout a portion of the year, is much higher than that outside the mine; that when his work is over for the day, his skin is covered with grease, smoke, dust, grime and perspiration; that without an opportunity to bathe and change his attire, he cannot clothe himself comfortably for his journey through cold weather to his home; that these adverse conditions in-

evitably lead to colds, consumption, pneumonia and general unhealthfulness; and that the statute in question should be sustained as a valid exercise of police power, and it is urged, as that power may be exercised to promote the comfort, health, welfare and safety of the public, that this statute is referable to that power as a health regulation, for the reason that it will afford the miner an opportunity to avoid danger to his health, otherwise consequent upon his occupation.

It is true, as suggested by counsel and as stated by this court in *Lasher* v. *People,* 183 Ill. 226, that the legislature has the power to form classes for the purpose of police regu-lation if it does not arbitrarily discriminate between persons in the same situation.

The only purpose of this act is to promote the health of miners and other persons employed in coal mines. Many men in this State are employed in the foundries and steel mills who work in a higher temperature than do the miners, surrounded by conditions deleterious to health and inimical to longevity. The convenience provided for by this act is not less desirable to them than to the coal miner.

While the power of the legislature to form classes in reference to which the police power may be exercised is unquestioned, there can be no discrimination among individuals in forming such classes unless there is some difference in their condition which causes them to naturally fall into different groups. *Lasher* v. *People, supra; Harding* v. *People, supra; Horwich* v. *Walker-Gordon Laboratory Co.* 205 Ill. 497.

It is apparent that a statute of this character, providing that a wash-house should be provided for miners working at a greater depth than two hundred feet below the surface and making no similar provision for miners working at a lesser depth, would be unconstitutional because it would make an arbitrary distinction between individuals surrounded by the same conditions.

We think the act in question, when considered as an exercise of police power, is properly the subject of the same

objection. The fact that it proposes to benefit workmen em-
ployed in coal mining does not make it valid, in view of the
fact that laborers in other employment are surrounded by
like conditions and are equally in need of the benefit of this
statute. As quoted from Cooley's Constitutional Limitations
in *Millett* v. *People, supra,* and in *Frorer* v. *People, supra:*
"Distinctions in these respects should be based upon some
reason which renders them important, like the want of ca-
pacity in infants and insane persons; but if the legislature
should undertake to provide that persons following some
specific lawful trade or employment should not have capacity
to make contracts or to receive conveyances, or to build such
houses as others were allowed to erect, or in any other way to
make such use of their property as was permissible to others,
it can scarcely be doubted that the act would transcend the
due bound of legislative power, even if it did not come in
conflict with express constitutional provisions."

It is manifest that for the purposes of this statute, no
such distinction exists between coal miners and workmen in
many other occupations in this State. The evil at which this
statute is aimed is one that is not visited alone upon persons
employed in coal mines. The legislature cannot ameliorate
the coal miners' condition under the guise of an exercise of
the police power and leave others unaided who suffer from
like causes. Conceding the importance which defendant in
error attaches to this act as a sanitary measure, it is apparent
that it is not sufficiently comprehensive to remedy the evil at
which it is aimed, because it will bring relief only to a part
of the people who suffer therefrom.

Defendant in error predicates its contention that this stat-
ute is constitutional principally upon the ground that it is
within section 29 of article 4 of the constitution of 1870, as
appears from the following language quoted from its brief:

"It might be conceded for the purpose of this argument
that if the act applied to any other class than miners it would
be open to the objection of class legislation, but the framers

of the constitution made an exception in favor of this partic-
ular class, which we contend is broad enough to furnish a
foundation for the act in question."

That section reads as follows:

"It shall be the duty of the General Assembly to pass
such laws as may be necessary for the protection of operative
miners, by providing for ventilation, when the same may be
required, and the construction of escapement shafts, or such
other appliances as may secure safety in all coal mines, and
to provide for the enforcement of said laws by such penal-
ties and punishments as may be deemed proper."

We think it also reasonable to conclude that the legisla-
tive purpose was to exercise a power contemplated by this
section of the constitution, as it does not appear from the
act or its title that the law-making power regarded it as a
sanitary measure passed by virtue of the police power of
the State.

It is contended that the purpose in adopting this constitu-
tional provision was to provide for the health as well as the
safety of persons employed in coal mines.

We are referred by the defendant in error to the debates
of the constitutional convention, that we may be made ac-
quainted with the views of that convention and determine
the meaning of this section in the light of the purpose for
which it was passed as disclosed by those debates.

"References to the proceedings of a constitutional con-
vention are sometimes resorted to by the courts in order to
find reasons for a particular action of the convention. They
are not resorted to for the purpose of construing away any
express language of the constitution, or even for the purpose
of construing what may be doubtful. 'When the inquiry is
directed,' says Judge Cooley, 'to ascertaining the mischief
designed to be remedied or the purpose sought to be accom-
plished by a particular provision, it may be proper to exam-
ine the proceedings of the convention which framed the
instrument. Where the proceedings clearly point out the

purpose of the provision, the aid will be valuable and satis-
factory.'—Cooley's Const. Lim. 63, and cases cited." *Wulff*
v. *Aldrich,* 124 Ill. 591; *Burke* v. *Snively,* 208 id. 328.

In the case at bar we do not think the discussion of this
provision prior to its adoption of any assistance. To adopt
the view of defendant in error would require us to interpolate
the words, "and health," after the word "safety," and then
the provision would be of doubtful meaning. If it was the
purpose of the builders of the constitution to direct the Gen-
eral Assembly to pass laws other than such as should "secure
safety in all coal mines," they failed to use language to man-
ifest their intention, and an ascertainment of their purpose
can avail nothing under such circumstances.

We are of opinion that the legislation in question is not
authorized by this constitutional provision for two reasons:
First, the purpose of this provision of the constitution is to
require the enactment of laws providing for the safety of the
miner while in the mine, and this act makes no provision
that will benefit the miner or protect or aid him until a time
after he has left the mine; second, the provision of the con-
stitution was designed only to require the enactment of laws
which should promote ventilation and guard the personal
safety of the miner—that is, protect him from personal in-
jury.

This latter view was taken by this court in *Millett* v. *Peo-
ple, supra,* where it is said: "We are not unmindful that
our constitution, in section 29, article 4, enjoins legislation
in the interest of miners; but this is solely as respects their
personal safety,—the enactment of police regulations to pro-
mote that end."

The miner works in a place where he is exposed to dan-
gers which do not assail those who labor above ground.
Damp, darkness, noxious gases, lack or difficulty of ventila-
tion and other causes contribute to render his situation while
at work unpleasant, undesirable and perilous. The consti-
tutional convention and the people of the State recognized

this condition, and, by the constitution, wisely commanded the legislature to enact such laws as should secure his personal safety while in the mine. When, however, he has ceased his labor, left the mine and reached the surface of the earth, he has for the time being passed beyond the operation of the constitutional provision and of any valid statute authorized thereby. His situation is not then different from that of many other workmen leaving their employment at the end of the day, and his rights under the constitution are not then greater than those of such other workmen.

An analogous question arose in Colorado, where it is provided by section 2 of article 16 of the constitution of the State that "the General Assembly shall provide by law for the proper ventilation of mines, the construction of escapement shafts, and such other appliances as may be necessary to protect the health and secure the safety of the workmen therein." It will be observed that this is broader than our own constitution in that it in terms includes appliances "to protect the health." In *In re Morgan,* 26 Colo. 415, the Supreme Court of that State, considering this provision, said: "These regulations manifestly embrace only such reasonably necessary mechanical appliances as will secure the end in view, and do not include other kinds of health regulations."

We conclude that the enactment here in question is not within the meaning of the section of our constitution herein above set forth, and that it is obnoxious to that provision of the fundamental law of the State which forbids special legislation in certain enumerated cases.

The judgment of the circuit court will be reversed.

*Judgment reversed.*

Mr. JUSTICE HAND, dissenting:

I do not agree to the conclusion reached in the foregoing opinion, but entertain the view that the statute referred to therein is a valid exercise of the police power of the State.