### WITHEY *v.* BLOEM.

1. CONSTITUTIONAL LAW—FREEDOM OF CONTRACT—PERSONAL LIBERTY—REGULATING EMPLOYMENT OF WOMEN—POLICE POWER.

    Act No. 285, Pub. Acts 1909, providing that no female shall be employed in any factory, mill, store, shop, or warehouse more than 10 hours in any day, or 54 hours a week, is a valid exercise of the police power, and does not violate the fourteenth amendment of the Constitution of the United States, by improperly restricting the right to contract.[1]

2. SAME—CLASS LEGISLATION—FEMALE LABOR.

    That women, employed in establishments where perishable products are preserved, are excepted from the operation of the statute, does not invalidate it, as class legislation; the exception being reasonable and founded on a substantial distinction.

Appeal from Barry; Smith, J. Submitted June 27, 1910. (Docket No. 94.) Decided December 7, 1910.

Bill by Hattie Withey and others against Isaac Bloem, deputy factory inspector, and Richard H. Fletcher, commissioner of labor, to enjoin the enforcement of Act No.

[1] As to limitation of hours of labor by statute or ordinance, see note to *People* v. *Orange County Road Construction Co.* (N. Y.), 65 L. R. A. 33; and note to *People* v. *Williams* (N. Y.), 12 L. R. A. (N. S.) 1130.

285, Pub. Acts 1909. From a decree for complainants, defendants appeal. Reversed.

*Beaumont, Smith & Harris* and *Colgrove & Potter,* for complainants.

*Franz C. Kuhn,* Attorney General, and *Charles W. McGill,* Assistant Attorney General, for defendants.

MOORE, J.  The International Seal & Lock Company is a corporation engaged in manufacturing large quantities of seals which are used by railroad companies and shippers of freight for the purpose of locking the doors of freight cars.  Aben E. Johnson is an assistant to the general manager of the factory of the said corporation, and the other complainants are women employed by said corporation in its factory.  The legislature of 1909 passed an act entitled:

"An act to provide for the creation of a department of labor; to prescribe its powers and duties; to regulate the employment of labor; to make an appropriation for the maintenance of such department and to prescribe penalties for the violation of this act."  Act No. 285, Pub. Acts 1909.

Section 9 of said act provides, in part, that:

" No female shall be employed in any factory, mill, warehouse, workshop, clothing, dressmaking or millinery establishment, or any place where the manufacture of any kind of goods is carried on, or where any goods are prepared for manufacturing, or in any laundry, store, shop or any other mercantile establishment, for a period longer than an average of nine hours in a day or fifty-four hours in any week nor more than ten hours in any one day: *Provided, however,* That the provisions of this section in relation to the hours of employment shall not apply to nor affect any person engaged in. preserving perishable goods in fruit and vegetable canning establishments."

The complainants filed a bill of complaint in chancery asking to have the provisions of section 9 and section 54 of said act held unconstitutional.  The defendants filed a

demurrer to the bill of complaint. The demurrer was overruled by the trial court for the reason that the proviso in section 9 was class legislation. The defendants have appealed to this court.

It is not claimed the act is contrary to the provisions of the Constitution of this State because section 29 of article 5 of the revised Constitution of the State of Michigan reads as follows:

" The legislature shall have power to enact laws relative to the hours and conditions under which women and children may be employed."

It is claimed as follows (we quote from the brief of counsel):

"(*a*) The law violates the fourteenth amendment to the Constitution of the United States, unless it can be defined as a 'health' law.

"(*b*) The law does not purport to be a 'health' law, or to be passed to meet [an emergency and to protect the health of women.

"(*c*) The law, therefore, if sustained at all, must be sustained on the theory that labor at any employment by women for more than an average of nine hours is harmful, and that a law so restricting female labor is a reasonable exercise of the police power.

"(*d*) The law is, however, void as class legislation, since it discriminates between the various classes of female labor."

Counsel subdivide each of these heads and argue them at length, citing many authorities which they claim apply.

It must be conceded at the outset that the courts have differed about the questions involved. The most marked difference, however, is between the earlier decisions and the later ones. In Bierly on Police Power, p. 9, it is said:

" The police power has been defined to be devoted to the protection of the lives, health, and property of citizens and the maintenance of good order. It is the power of the State to make all manner of reasonable laws for the welfare of the commonwealth and the good people thereof."

In Russell on Police Power, at page 28, it is said, that—

"The range of legislation with respect to subjects of governmental control in the exercise of the police power has been much extended within the last quarter of a century. The reason of this is obvious. Modern social life has called into being many agencies not heretofore existing."

The learned author then gives many instances of its exercise, among them being the prevention of diseases, the public health, and concerning hours of labor, and forbidding or regulating contracts for the labor of women and children. The author expresses the opinion that—

"With reference to many of the matters above named, there has been a progressive development of governmental functions, and this development is likely to continue with the increased application of science to the business of life."

From what we have quoted from the brief of counsel, it is evident that two important questions are presented:

*First.* Is the legislation in violation of the fourteenth amendment to the Constitution of the United States because it interferes with the right to labor and to make contracts in relation thereto?

*Second.* Is it class legislation?

In support of the first proposition, counsel cite a number of authorities, one of which (*Lochner* v. *New York*, 198 U. S. 45 [25 Sup. Ct. 539]) they regard of so much importance that they quote from it at great length in the brief. An examination of the opinion shows that the labor law which was before the court was not legislation in the interest of women or of minors, but applied to all employés of bakeries. The court said of the legislation which was then before it that the limit of the police power was reached and passed, and that the case differs widely from *Holden* v. *Hardy*, 169 U. S. 366 (18 Sup. Ct. 383), and *Jacobson* v. *Massachusetts*, 197 U. S. 11 (25 Sup. Ct. 358). In the course of the opinion, Justice Peckham, speaking for the court, used the following language:

"The general right to make a contract in relation to his business is part of the liberty of the individual protected by the fourteenth amendment of the Federal Constitution. *Allgeyer* v. *Louisiana,* 165 U. S. 578 (17 Sup. Ct. 427). Under that provision no State can deprive any person of life, liberty, or property without due process of law. The right to purchase or to sell labor is part of the liberty protected by this amendment, unless there are circumstances which exclude the right. There are, however, certain powers, existing in the sovereignty of each State in the Union, somewhat vaguely termed 'police powers,' the exact description and limitation of which have not been attempted by the courts. Those powers, broadly stated, and without, at present, any attempt at a more specific limitation, relate to the safety, health, morals, and general welfare of the public. Both property and liberty are held on such reasonable conditions as may be imposed by the governing power of the State in the exercise of those powers, and with such conditions the fourteenth amendment was not designed to interfere. *Mugler* v. *Kansas,* 123 U. S. 623 (8 Sup. Ct. 273); *In re Kemmler,* 136 U. S. 436 (10 Sup. Ct. 930); *Crowley* v. *Christensen,* 137 U. S. 86 (11 Sup. Ct. 13); *In re Converse,* 137 U. S. 624 (11 Sup. Ct. 191). The State therefore has power to prevent the individual from making certain kinds of contracts, and in regard to them the Federal Constitution offers no protection. If the contract be one which the State, in the legitimate exercise of its police power, has the right to prohibit, it is not prevented from prohibiting it by the fourteenth amendment."

In *Muller* v. *Oregon,* 208 U. S. 412 (28 Sup. Ct. 324), which involved the construction of a statute relating to the hours of labor of women employed in laundries, Justice Brewer, who wrote the opinion, referred to the case of *Lochner* v. *New York, supra,* as follows:

"We held, in *Lochner* v. *New York,* 198 U. S. 45 (25 Sup. Ct. 539), that a law providing that no laborer shall be required or permitted to work in a bakery more than 60 hours in a week or 10 hours in a day was not as to men a legitimate exercise of the police power of the State, but an unreasonable, unnecessary, and arbitrary interference with the right and liberty of the individual to contract in

relation to his labor, and as such was in conflict with, and void under, the Federal Constitution. That decision is invoked by plaintiff in error as decisive of the question before us. But this assumes that the difference between the sexes does not justify a different rule respecting a restriction of the hours of labor."

He also referred to a copious collection of data as to the course of legislation and expressions in relation to the restrictions imposed upon the labor of women, and proceeds as follows:

"While there have been but few decisions bearing directly upon the question, the following sustain the constitutionality of such legislation: *Commonwealth* v. *Manufacturing Co.*, 120 Mass. 383; *Wenham* v. *State*, 65 Neb. 394, 400, 406 (91 N. W. 421, 58 L. R. A. 825); *State* v. *Buchanan*, 29 Wash. 602 (70 Pac. 52, 59 L. R. A. 342, 92 Am. St. Rep. 930); *Commonwealth* v. *Beatty*, 15 Pa. Super. Ct. 5, 17. Against them is the case of *Ritchie* v. *People*, 155 Ill. 98 (40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315).

"The legislation and opinions referred to in the margin may not be, technically speaking, authorities, and in them is little or no discussion of the constitutional question presented to us for determination, yet they are significant of a widespread belief that woman's physical structure, and the functions she performs in consequence thereof, justify special legislation restricting or qualifying the conditions under which she should be permitted to toil. Constitutional questions, it is true, are not settled by even a consensus of present public opinion, for it is the peculiar value of a written constitution that it places in unchanging form limitations upon legislative action, and thus gives a permanence and stability to popular government which otherwise would be lacking. At the same time, when a question of fact is debated and debatable, and the extent to which a special constitutional limitation goes is affected by the truth in respect to that fact, a widespread and long-continued belief concerning it is worthy of consideration. We take judicial cognizance of all matters of general knowledge.

"It is undoubtedly true, as more than once declared by this court, that the general right to contract in relation to one's business is part of the liberty of the individual, pro-

tected by the fourteenth amendment to the Federal Constitution; yet it is equally well settled that this liberty is not absolute and extending to all contracts, and that a State may, without conflicting with the provisions of the fourteenth amendment, restrict in many respects the individual's power of contract. Without stopping to discuss at length the extent to which a State may act in this respect, we refer to the following cases in which the question has been considered: *Allgeyer* v. *Louisiana*, 165 U. S. 578 (17 Sup. Ct. 427); *Holden* v. *Hardy*, 169 U. S. 366 (18 Sup. Ct. 383); *Lochner* v. *New York*, 198 U. S. 45 (25 Sup. Ct. 539).

"That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence, is obvious. This is especially true when the burdens of motherhood are upon her. Even when they are not, by abundant testimony of the medical fraternity, continuance for a long time on her feet at work, repeating this from day to day, tends to injurious effects upon the body, and, as healthy mothers are essential to vigorous offspring, the physical well-being of woman becomes an object of public interest and care in order to preserve the strength and vigor of the race.

"Still again, history discloses the fact that woman has always been dependent upon man. He established his control at the outset by superior physical strength, and this control in various forms, with diminishing intensity, has continued to the present. As minors, though not to the same extent, she has been looked upon in the courts as needing especial care that her rights may be preserved. Education was long denied her, and while now the doors of the schoolroom are opened and her opportunities for acquiring knowledge are great, yet, even with that and the consequent increase of capacity for business affairs, it is still true that in the struggle for subsistence she is not an equal competitor with her brother. Though limitations upon personal and contractual rights may be removed by legislation, there is that in her disposition and habits of life which will operate against a full assertion of those rights. She will still be where some legislation to protect her seems necessary to secure a real equality of right. Doubtless there are individual exceptions, and there are many respects in which she has an advantage over him; but, looking at it from the viewpoint of the effort to maintain an independent position

in life, she is not upon an equality. Differentiated by these matters from the other sex, she is properly placed in a class by herself, and legislation designed for her protection may be sustained, even when like legislation is not necessary for men and could not be sustained. It is impossible to close one's eyes to the fact that she still looks to her brother and depends upon him. Even though all restrictions on political, personal, and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him, it would still be true that she is so constituted that she will rest upon and look to him for protection; that her physical structure and a proper discharge of her maternal functions —having in view not merely her own health, but the well-being of the race—justify legislation to protect her from the greed as well as the passion of man. The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long-continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence. This difference justifies a difference in legislation and upholds that which is designed to compensate for some of the burdens which rest upon her."

In the recent case of *Ritchie & Co.* v. *Wayman*, 244 Ill. 509 (91 N. E. 695, 27 L. R. A. [N. S.] 994), the court said:

"The right of the individual to contract with reference to labor is held inviolable under the constitution on the ground that the privilege of contracting with reference to labor is a property right, within the purview of the constitution. *Frorer* v. *People*, 141 Ill. 171 (31 N. E. 395, 16 L. R. A. 492). There inhere in the State, however, certain sovereign powers, among which powers is that characterized as the police power, which, when broadly stated, is that power of the State which relates to the conservation of the health, morals, and general welfare of the public, and the property rights of the citizen are always

held and enjoyed subject to the reasonable exercise of the police power by the State. If this statute can be sustained, it must be sustained, we think, as an exercise of the police power. In *City of Chicago* v. *Dairy Co.*, 234 Ill. 294, 297 (84 N. E. 913, 914, 17 L. R. A. [N. S.] 684, 123 Am. St. Rep. 100), it was said:

" 'The police power is said to be an attribute of sovereignty, and to exist without any reservation in the constitution, and to be founded upon the duty of the State to protect its citizens and to provide for the safety and good order of society.'

"In *McPherson* v. *Village of Chebanse*, 114 Ill. 46 (28 N. E. 454, 55 Am. Rep. 857), an ordinance prohibiting persons from keeping open their places of business in a city or village for the purpose of vending goods, wares, and merchandise on Sunday was sustained as a proper exercise of the police power. In *Booth* v. *People*, 186 Ill. 43 (57 N. E. 798, 50 L. R. A. 762, 78 Am. St. Rep. 229), section 130 of the Criminal Code, which declares grain option contracts to be gambling contracts, was held to be a valid police regulation. In *City of Chicago* v. *Gunning System*, 214 Ill. 628, on page 635 (73 N. E. 1035, 70 L. R. A. 230), it was said:

" 'The police power of the State is that inherent or plenary power which enables the State to prohibit all things hurtful to the comfort, safety, and welfare of society, and may be termed "the law of overruling necessity." *Town of Lake View* v. *Cemetery Co.*, 70 Ill. 191 (22 Am. Rep. 71); *Wabash, etc., Ry. Co.* v. *People*, 105 Ill. 236. Anything which is hurtful to the public interest is subject to the police power and may be restrained or prohibited in the exercise of that power. *Dunne* v. *People*, 94 Ill. 120 (34 Am. Rep. 213); *Cole* v. *Hall*, 103 Ill. 30; *Harmon* v. *City of Chicago*, 110 Ill. 400 (51 Am. Rep. 698). All rights, whether tenable or untenable, are held subject to this police power. *Northwestern Fertilizing Co.* v. *Village of Hyde Park*, 70 Ill. 634.'

"In *City of Chicago* v. *Dairy Co.*, *supra*, it was held the regulation of the sale of milk and cream in bottles and glass jars by a city was a proper exercise of the police power, and in *City of Chicago* v. *Schmidinger*, 243 Ill. 167 (90 N. E. 369), that the bread ordinances of the city of Chicago, which fixed the size of loaves and regulated the sale of bread, were a valid exercise of the police power.

"From the examples above referred to, found in adjudicated cases, it will be seen that the police power is a

very broad power, and may be applied to the regulation of every property right so far as it may be reasonably necessary for the State to exercise such power to guard the health, morals, and general welfare of the public.    It is known to all men (and what we know as men we cannot profess to be ignorant of as judges) that woman's physical structure and the performance of maternal functions place her at a great disadvantage in the battle of life; that, while a man can work for more than 10 hours a day without injury to himself, a woman, especially when the burdens of motherhood are upon her, cannot; that, while a man can work standing upon his feet for more than 10 hours a day, day after day, without injury to himself, a woman cannot; and that to require a woman to stand upon her feet for more than 10 hours in any one day and perform severe manual labor while thus standing, day after day, has the effect to impair her health; and that, as weakly and sickly women cannot be the mothers of vigorous children, it is of the greatest importance to the public that the State take such measures as may be necessary to protect its women from the consequences induced by long continuous manual labor in those occupations which tend to break them down physically.    It would therefore seem obvious that legislation which limits the number of hours which women shall be permitted to work to 10 hours in a single day in such employments as are carried on in mechanical establishments, factories, and laundries would tend to preserve the health of women and insure the production of vigorous offspring by them, and would directly conduce to the health, morals, and general welfare of the public, and that such legislation would fall clearly within the police power of the State.    Legislation limiting the number of hours which women shall work in establishments similar to those enumerated in the statute now under consideration to a period of not more than 10 hours in any one day has been sustained in *Muller* v. *Oregon*, 208 U. S. 412 (28 Sup. Ct. 324); *State* v. *Muller*, 48 Or. 252 (85 Pac. 855, 120 Am. St. Rep. 805); *Wenham* v. *State*, 65 Neb. 394 (91 N. W. 421, 58 L. R. A. 825); *Commonwealth* v. *Manufacturing Co.*, 120 Mass. 383; and *State* v. *Buchanan*, 29 Wash. 602 (70 Pac. 52, 59 L. R. A 342, 92 Am. St. Rep. 930)."

The case of *Muller* v. *Oregon*, *supra*, from which we have quoted at such length, was cited with approval by

this court in *People* v. *Case*, 153 Mich. 98 (116 N. W. 558, 18 L. R. A. [N. S.] 657). For an interesting discussion of one phase of the police power, see *People* v. *Smith*, 108 Mich. 527 (66 N. W. 382, 32 L. R. A. 853, 62 Am. St. Rep. 715).

We think it clear that, according to the great weight of modern authority, the provisions of the law are not unconstitutional.

*Second.* Is the law class legislation? Counsel contend (we quote from the brief):

"Section 9 of the act in question provides, among other things, as follows:

"'Provided, however, that the provisions of this section in relation to the hours of employment shall not apply to nor affect any person engaged in preserving perishable goods in fruit and vegetable canning establishments.'

"It is our contention that this exception makes the entire section of the act unconstitutional and void, and is class legislation. Under this exception women may engage their services any number of hours in preserving perishable goods, fruits, vegetables, and may work in canning establishments, 10, 12, or as many hours as they see fit to contract their services for. Solicitors for defendants contend that this bill, and especially section 9, is a health regulation. That by virtue of the police power the legislature has the right to pass such laws as in their judgment are calculated to preserve the health of the women of the State. This exception of the statute entirely abrogates this theory. The legislature, by injecting such an exception into the statute, satisfy us that they were not looking to the health of the women, but rather the preservation of fruits and vegetables. It is purely the spirit of commercialism, without any thought of the health of the women or the number of hours that they shall be employed; in other words, the provision means simply this: that, in order to protect the commercial interests of that class of citizens who are engaged in preserving perishable goods and who invested their money in canning establishments, they may work women any number of hours in order that their profits may be increased and their business not interfered with. If this is not class legislation, we can scarcely conceive what class legislation means."

In the seventh edition of Cooley on Constitutional Limitations, p. 554, the following language is used:

"Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application; they may embrace many subjects or one, and they may extend to all citizens, or be confined to particular classes, as minors or married women, bankers or traders, and the like. The authority that legislates for the State at large must determine whether particular rules shall extend to the whole State and all its citizens, or, on the other hand, to a subdivision of the State or a single class of its citizens only. The circumstances of a particular locality, or the prevailing public sentiment in that section of the State, may require or make acceptable different police regulations from those demanded in another, or call for different taxation, and a different application of the public moneys. The legislature may therefore prescribe or authorize different laws of police, allow the right of eminent domain to be exercised in different cases and through different agencies, and prescribe peculiar restrictions upon taxation in each distinct municipality, provided the State Constitution does not forbid. These discriminations are made constantly; and the fact that the laws are of local or special operation only is not supposed to render them obnoxious in principle. The legislature may also deem it desirable to prescribe peculiar rules for the several occupations, and to establish distinctions in the rights, obligations, duties, and capacities of citizens. The business of common carriers, for instance, or of bankers, may require special statutory regulations for the general benefit, and it may be matter of public policy to give laborers in one business a specific lien for their wages, when it would be impracticable or impolitic to do the same for persons engaged in some other employments. If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge."

In *Spurr* v. *Travis*, 145 Mich. 721 (108 N. W. 1090, 116 Am. St. Rep. 330), the "sales in bulk act," so called, was attacked upon the ground of being class legislation, and it was there held that it was not class legislation,

though its operation was limited to merchants and to those merchants who owe debts.

The case of *Mt. Vernon-Woodberry Cotton Duck Co.* v. *Insurance Co.*, 111 Md. 561 (75 Atl. 105), is directly in point. In this case the statute forbids the employment of children under 12 years of age in the mills and factories of the State " other than the establishments for manufacturing canned goods." It was held that the legislation was not class legislation.

In the case of *Ritchie & Co.* v. *Wayman*, 244 Ill. 509 (91 N. E. 695, 27 L. R. A. [N. S.] 994), from which we have already quoted, it was argued that the statute was class legislation. The court decided it was not open to that objection. Some of the language used in the opinion is as follows:

" It is next contended that the act in question is special legislation in this: *First*, that it singles out the business of those persons who are conducting mechanical establishments or factories or laundries and prohibits the employment of females in those establishments for a longer time than 10 hours in any one day, while other establishments engaged in substantially the same business are permitted to employ females any number of hours in one day; *second*, that it has the effect to divide men and women into classes; and, *third*, that, after women have been set aside as a class, to then divide women into two classes—that is, that women who work in mechanical establishments or factories or laundries are only permitted to work 10 hours in any one day, and that women who are not employed in mechanical establishments, factories, or laundries are permitted to work any number of hours in any one day— is special and class legislation, and unconstitutional and void.

" The business places which are enumerated by the statute —that is, mechanical establishments, factories, and laundries—form a class by themselves, and differ from mercantile establishments, hotels, restaurants, etc., in this: that the product of those establishments enumerated in the statute is largely produced by machinery, or the employés of such establishments work with machinery, or the pace at which the employés work in such establishments is set by other employés who work with machinery.

It would seem, therefore, that the legislature has not arbitrarily carved out a class of establishments in which women whose time of employment is limited to 10 hours a day are to work, but that the line of demarcation between the establishments to which the 10-hour limit applies, and those to which it does not apply, is clearly defined. In *Hawthorn* v. *People*, 109 Ill. 302, 311 (50 Am. Rep. 610), the court said:

"'It (the statute) embraces all persons in the State similarly engaged. If all laws were held unconstitutional because they did not embrace all persons, few would stand the test. * * * A law is general, not because it embraces all of the governed, but that it may, from its terms, when many are embraced in its provisions, and all others may be when they occupy the position of those who are embraced.'

"In *Gundling* v. *City of Chicago*, 176 Ill. 340 (52 N. E. 44, 48 L. R. A. 230), it was held that the city might regulate the sale of cigarettes, and that the law was not special legislation by reason of the fact that it did not require a license of all persons who sold tobacco in the city. In *City of Chicago* v. *Dairy Co.*, *supra*, it was held that the city might regulate the sale of milk and cream in bottles or glass jars without the ordinance being subject to the objection of being special legislation because all persons who sold milk or cream in the city did not fall within the terms of the ordinance. We do not think the statute objectionable on the ground that it amounts to special legislation. * * *

"As to the third objection, that women by the act are divided into two classes—that is, those whose service is limited to a 10-hour day and those whose service is not limited—we have also already suggested the answer to this contention, namely, that those women whose service is limited to a 10-hour day work in establishments whose product is produced by machinery, or whose employés work with machinery, or the pace at which such employés work, is set by other employés who work with machinery. We think that women thus situated, while at work, are under a pressure and spur which is much more likely to drive them to overexertion when exhausted by a long-continued effort, and thereby to impair their health, than are their more favored sisters likely to be driven, who are engaged in an employment which is not forced at all times up to the limit of production by the agencies of steam,

electricity, or other motor power when applied to machinery. There is, therefore, we think, an obvious and clear distinction between the two classes of women when working in the class of employment covered by the statute and in other vocations of life, by reason of their environment when at work. It is well settled that legislation which applies only to a certain class of citizens is not, under all circumstances, class legislation. A law that is made applicable to only one class of citizens, however, must be based upon some substantial difference between the situation of that class and other individuals to which it does not apply. Here we think that substantial difference exists. *Harding* v. *People,* 160 Ill. 459 (43 N. E. 624, 32 L. R. A. 445, 52 Am. St. Rep. 344); *Gillespie* v. *People,* 188 Ill. 176 (58 N. E. 1007, 52 L. R. A. 283, 80 Am. St. Rep. 176); *Horwich* v. *Laboratory Co.,* 205 Ill. 497 (68 N. E. 938, 98 Am. St. Rep. 254); *Starne* v. *People,* 222 Ill. 189 (78 N. E. 61, 113 Am. St. Rep. 389); *Jones* v. *Railway Co.,* 231 Ill. 302 (83 N. E. 215, 121 Am. St. Rep. 313). We therefore conclude the act now under consideration is not subject to the objection that it is class legislation because it does not apply to all women who perform manual labor."

See, also, 9 Mich. Law Review, p. 44.

If legislation which applies to one calling only, pursued by women, is not class legislation, it is difficult to see how legislation which applies to many callings pursued by women can be said to be class legislation because it does not apply to all callings pursued by her. We conclude the legislation is not unconstitutional, and that it is not class legislation.

The decree of the lower court is reversed, and one may be entered here dismissing the bill of complaint, with costs of both courts.

OSTRANDER, McALVAY, BROOKE, and BLAIR, JJ., concurred.