(79 Misc. Rep. 140.)

PEOPLE ex rel. HOELDERLIN v. KANE, Warden.

(Supreme Court, Special Term, Kings County. January 8, 1913.)

1. INFANTS (§ 12*)—STATUTORY REGULATION OF EMPLOYMENT.
   Labor Law (Consol. Laws 1909, c. 31) § 77, as amended by Laws 1912, c. 539, is constitutional in so far as it limits the working hours of minors; the state having power to protect its wards.
   [Ed. Note.—For other cases, see Infants, Cent. Dig. § 13; Dec. Dig. § 12.*]

2. COURTS (§ 95*)—PRECEDENTS—DECISIONS OF COURTS OF OTHER STATES.
   Since the adoption of the fourteenth amendment to the United States Constitution, the federal Supreme Court has become the final arbiter of whether a state in the exercise of its police power has violated the constitutional guaranty, thus making the various state courts courts of concurrent jurisdiction, and so the decisions of the courts of one state on such question are not to be regarded in another as those of a foreign tribunal, but as those of a court of equal authority.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 322, 323; Dec. Dig. § 95.*]

3. CONSTITUTIONAL LAW (§ 89*)—MASTER AND SERVANT (§ 10*)—POLICE POWERS—REGULATION OF FEMALE LABOR—HOURS OF WORK.
   While the courts are bound to protect constitutional liberty against encroachments, even by the Legislature, the liberty to be protected is civil or political liberty, and, while persons are entitled to liberty of contract, the state, if for the protection of its inhabitants, may under its police power limit the hours which women may work in certain industries, as was done by Labor Law (Consol. Laws 1909, c. 31) § 77.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 157; Dec. Dig. § 89;* Master and Servant, Cent. Dig. § 13; Dec. Dig. § 10.*]

4. CONSTITUTIONAL LAW (§ 238*)—EQUAL PROTECTION OF LAW—CLASSIFICATION—"LAW."
   While a law is a rule of conduct which must apply alike to all under like conditions, and the state cannot deny any person the equal protection

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the laws, the Legislature in framing them has a reasonable right of classification, and, unless the classification is unreasonable as a matter of common knowledge, the courts cannot interfere, and consequently cannot hear evidence on the reasonableness of the classification, hence Labor Law (Consol. Laws 1909, c. 31) § 77, which limits under a penalty the hours women may work in all factories other than canning establishments, is not invalid as class legislation, though excepting those establishments.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 688–699, 706–708; Dec. Dig. § 238.*

For other definitions, see Words and Phrases, vol. 5, pp. 4014–4023; vol. 8, p. 7701.]

Habeas corpus by the People, on the relation of William Hoelderlin, against Thomas Kane, as warden of the city prison of the borough of Brooklyn, city of New York. Writ dismissed, and relator remanded to custody.

Alfred J. Talley, of New York City (Denis B. O'Brien, of New York City, of counsel), for relator.

James C. Cropsey, Dist. Atty., of Brooklyn (Hersey Egginton, Asst. Dist. Atty., of Brooklyn, of counsel), for respondent.

BLACKMAR, J. This is a proceeding on habeas corpus said to be brought to test the constitutionality of the law limiting the hours of labor of minors and women in factories, other than canning establishments, to 9 hours a day and 54 hours a week. The respondent returns that he holds the relator under three commitments for the violation of section 77 of the Labor Law: One, for employing a male minor under the age of 18 years more than 54 hours a week; another, for employing a female minor under the age of 21 years more than 54 hours a week; and another, for employing a female over the age of 21 years more than 54 hours a week. The return was traversed, alleging the unconstitutionality of section 77 of the Labor Law, as amended in 1912, and the district attorney appearing for the defendant demurred to the traverse.

[1] The case might be summarily disposed of on the ground that, whatever may be said regarding the validity of the law limiting the hours of labor of adult women, it was competent beyond question for the Legislature to prescribe such limitations in the case of minors, who are wards of the state, and that such provisions of the law are plainly severable. I shall not, however, place my decision on that ground, but shall consider the very question argued orally and in briefs, viz., whether it is constitutional for the Legislature to make it a crime to employ an adult female to work in a candy factory more than 54 hours in a week. It is claimed, first, that the constitutional guaranty of "liberty" is violated, in that the law in question abridges the right of both employer and employé to contract for labor; and, second, that the exemption of contracts for labor in canning factories during the summer season violates the principle that laws must be uniform in their application, and the provision in the fourteenth amendment to the United States Constitution forbidding any state to deny to any

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

person within its jurisdiction the equal protection of the law. I propose to rest this case on the authority of reported decisions of the courts, with a few prefatory remarks as to their relative value.

[2] Prior to the adoption of the fourteenth amendment to the United States Constitution, each state decided for itself the question of the limitation of the police power. It was a question of the domestic policy of the several states and the decisions of their tribunals upon it were final. Since the adoption of the amendment, the liberty of the individual is protected by the United States Constitution against action by the states. All judicial questions of the power of the several states to restain liberty by the exercise of the police power are thus finally brought to the arbitrament of the United States Supreme Court. On this class of questions, that is the court of last resort, and its decisions are the supreme authority. Since the enactment of that amendment the courts of all the states, with reference to the rights therein secured to individuals, have become courts of co-ordinate jurisdiction. Whether the decision comes from Maine or Oregon, from Minnesota or Louisiana, if it sustains a statute of the state limiting liberty in the exercise of the police power, it is subject to review by the Supreme Court. The courts of all the states are working together with equal powers in this field of law. The decisions of the United States Supreme Court upon the police power are therefore controlling, and those of the courts of sister states may no longer be regarded as decisions of foreign tribunals, but they are entitled to that degree of deference which is yielded to courts of equal authority administering, not similar laws, but the same law.

[3, 4] Bearing this principle in mind, I proceed to an examination of the authorities. Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957, decided that an act of the Legislature of Oregon prohibiting the employment of females in any mechanical establishment or factory or laundry more than ten hours during any day is not unconstitutional so far as respects laundries. The case differs from the one at bar, for in this case the employment was not in a laundry, but in a candy factory, and the legal limit is not 10 hours a day, but 9 hours a day and 54 hours a week. That case, however, decides the fundamental proposition that, for the purpose of the application of a law under the police power, the Legislature may establish a class composed of women alone, and may limit the hours of labor of the individuals composing that class.

In State v. Somerville, 67 Wash. 638, 122 Pac. 324, decided in March 1912, a law limiting the hours of labor of women to eight hours a day was held constitutional as applied to paper box manufactures. In Commonwealth v. Riley, 210 Mass. 387, 97 N. E. 367, Ann. Cas. 1912D, 388, decided January 1, 1912, an act limiting the hours during which women may be employed in manufacturing and mechanical establishments to 56 hours in one week and 10 hours in one day was upheld. In Ritchie & Co. v. Wayman, 244 Ill. 509, 91 N. E. 695, 27 L. R. A. (N. S.) 994, decided April 21, 1910, the courts of Illinois upheld legislation forbidding the employment of females in any mechanical establishment, factory, or laundry more than 10 hours a day.

In Withey v. Bloem, 163 Mich. 419, 128 N. W. 913, 35 L. R. A. (N. S.) 628, a law prohibiting the employment of women in factories more than 10 hours a day and 54 hours a week was held not violative of the United States Constitution. For other cases in which like legislation has been held to be constitutional, see Wenham v. State, 65 Neb. 394, 91 N. W. 421, 58 L. R. A. 825; Commonwealth v. Beatty, 15 Pa. Super. Ct. 5; Commonwealth v. Hamilton Mfg. Co., 120 Mass. 383.

I find practically nothing against all this weight of authority. Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315, has been distinguished to the point of being overruled by the later case of Ritchie & Co. v. Wayman, 244 Ill. 509, 91 N. E. 695, 27 L. R. A. (N. S.) 994. Matter of Maguire, 57 Cal. 604, 40 Am. Rep. 125, was a case of the employment of a woman in a barroom, and a statute prohibiting it was declared unconstitutional as violating section 18, art. 20, of the California Constitution, which provided that:

"No person shall on account of sex be disqualified from entering upon or pursuing any lawful business, vocation, or profession."

This case obviously is no authority for the relator. Burcher v. People, 41 Colo. 495, 93 Pac. 14, 124 Am. St. Rep. 143, was also decided upon the peculiar wording of the Constitution of Colorado.

The relator appeals to Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133. This is the famous bakeshop case. It holds that the state of New York cannot limit the hours of employés in bakeries to 10 hours a day without infringing the liberty of the individual to contract for his labor guaranteed by the fourteenth amendment. The case is exceedingly interesting. It arose in the County Court of Oneida county in this state, and progressed through the Appellate Division of the Supreme Court, the Court of Appeals, and the United States Supreme Court. Twenty-two judges participated in the several decisions. The only unanimous decision was by the County Court, where there was but one judge. In the Appellate Division the justices divided three to two; in the Court of Appeals, four to three; and in the United States Supreme Court, five to four. There were nine separate opinions written. Of the 22 judges, 12 were of the opinion that the law was constitutional, and 10 that it was not. The opinion of the minority prevailed because 5 of the 10 judges who thought the law unconstitutional were members of the court of last resort. What does this remarkable divergence of opinion suggest? I do not find in the nine opinions any reason for thinking that there were any differences as to the rules of law governing the case. The power of the state to enact laws for the welfare of the people, notwithstanding the constitutional guaranty of the liberty of the individual, was not questioned. The difficulty was in determining whether the law in question was in furtherance of public welfare. The courts were approaching a question of political economy. So Judge Edward T. Bartlett of the Court of Appeals speaks of a "coming day when the Legislature, in the full panoply of paternalism," etc. Justice Peckham of the United States Supreme Court says, "stat-

utes of the nature of that under review, limiting the hours in which grown and intelligent men may labor to earn their living, are mere meddlesome interferences with the rights of the individual;" and Justice Holmes says, "This case is decided upon an economic theory which a large part of the country does not entertain," and again:

"But a Constitution is not intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the state or of laissez faire."

The fact that economic theories entertained by the judges influence their decisions as to the limits of the police power should not be excluded from the mind while studying the subject. Neither can such decisions be regarded as landmarks permanently defining such limits. Laws, which may be meddlesome interferences with the liberty of the individual in a primitive state, may in a highly organized society become essential to public welfare or even to the continuance of civil liberty itself. The pace at which courts move in sympathy with fast developing economic ideas may be illustrated by Lochner v. New York, the hesitating utterance of divided courts in 1905, followed by Muller v. Oregon, the confident pronouncement of a united bench in 1908. Whatever may be said of Lochner v. New York, it is so distinguished by the later case of Muller v. Oregon that it is no authority for the relator in the case at bar.

Neither does People v. Williams, 189 N. Y. 131, 81 N. E. 778, 12 L. R. A. (N. S.) 1130, 121 Am. St. Rep. 854, 12 Ann. Cas. 798, sustain the relator's claim. That case decided only that it was not competent for the Legislature to prohibit a woman from working in a factory before 6 in the morning and after 9 o'clock at night. The act had no relation to the number of hours of labor. To work a half hour or less in a factory before or after the forbidden hours violated the law, even if that were the extent of the whole day's work. The case is decided largely on the authority of Lochner v. New York; and Muller v. Oregon forbids our drawing therefrom any general rule that labor legislation for women alone is unconstitutional. The remark therein made that women are not wards of the state is unquestionably correct. This wardship depends on presumed (in the case of infants) or proved (in the case of lunatics) mental incompetency. No one claims that the differentiation of women from men, as subjects of legislation, depends on mental conditions. The justification for legislation special to women rests, as is said by Justice Brewer in Muller v. Oregon, on the fact of common knowledge that woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for existence. The element of invalidity in the statute under consideration, which was developed in People v. Williams, is plainly severable.

The authority upon the question seems complete. The power of the Legislature to create a class, consisting of women only, and limit their hours of labor, is established in Muller v. Oregon. That the limitation may be to 54 hours a week is decided by State v. Somerville and Withey v. Bloem; and in these two cases the regulation was held valid as applied to the manufacture of paper boxes, and seals for

locking freight cars, occupations apparently as light and innocuous as candy making.

But the relator claims that the exemption of the work in canning factories from the 15th of June to the 15th of October renders the law unconstitutional. A law is a rule of conduct. It must apply alike to all under like conditions. Nor can any state deny to any person within its jurisdiction the equal protection of the law. A law therefore cannot make an act criminal as to one person which is innocent in another under like circumstances and conditions. But, as circumstances and conditions differ, classification of those subject to the law may, and often must, be made for the purposes of securing that very uniformity which is essential to law. The precise question in this case is whether the Legislature may, for the purpose of regulating the hours of labor therein, establish a class consisting of factories, as defined by the law of New York, except canning factories. This depends on whether there is a difference in conditions which warrants the classification. Resorting to authority, we find that this very question has been decided in State v. Somerville, 67 Wash. 638, 122 Pac. 324, and·in Withey v. Bloem, 163 Mich. 419, 128 N. W. 913, 35 L. R. A. (N. S.) 628, and in Mt. Vernon, etc., Co. v. Frankfort, etc., Co, 111 Md. 561, 75 Atl. 105, 134 Am. St. Rep. 636. These are all cases in which canning factories have been exempted from the operation of laws fixing the hours of labor for women and children in manufacturing establishments.

The relator has presented to me a record of evidence taken this year before a committee of the Senate of the state of New York. It is claimed that this record shows that conditions in canning establishments are more injurious to the health of women and children than in many other factories; for instance, than in candy factories. But this is a subject upon which the court cannot take evidence. Classification for the purpose of confining the operation of laws is a legislative function. Every statute presupposes a finding by the Legislature of the facts necessary to bring the act within its powers. In ascertaining these facts the Legislature is not limited to the narrow field of legal evidence. It may draw its information from any source open to mankind. If the courts may review this finding of the Legislature with the aid of such limited means of knowledge as legal evidence affords, an act might be held constitutional in one case and otherwise in another, dependent upon the industry with which the evidence was collected and the skill with which it was presented. In State v. Somerville, supra, evidence was offered that the work was light and harmless, and the court held it irrelevant, saying:

"Courts, in passing upon the reasonableness or unreasonableness of a statute, and deciding whether the Legislature has exceeded its powers to such an extent as to render the act invalid, must look at the terms of the act itself and bring to their assistance such scientific, economic, physical, and other pertinent facts as are common knowledge, and of which they can take judicial notice."

And again:

"In all cases pertaining to the police power the Legislature is supreme, unless the general application of the law does violence to the common knowledge of men, in which event a court might properly intervene."

What matter of common knowledge instructs me that conditions in canning factories require the limitation of the hours of women therein in the same measure as in other factories? They may or may not. I do not know. Neither can I take evidence on the subject. I may read the act and bring to my assistance matters of common knowledge, such as a court may take cognizance of without evidence, and, unless it thereby appears that there is no reasonable basis for the exception, I must trust to the wisdom of the Legislature and uphold the act. The information received by the court in Muller v. Oregon, 208 U. S. 419, 28 Sup. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957, such as the statutes of other states and foreign nations, reports of committees, bureaus and commissions, proceedings of medical societies, and matters of that kind, are legitimate means of ascertaining what are matters of common knowledge. Such things I may receive, but not evidence of conditions in certain canning factories such as is offered in this case. If the inquiry now in progress shows that the exception of canning factories is not justified, we may presume that the law will be corrected by the Legislature. But, irrespective of conditions in these factories, it is for the Legislature to determine whether the interest of the public in preserving perishable fruits is more important than the health of female and minor employés. However loathe the courts might be to acquiesce in the wisdom or humanity of such a decision, yet it is a matter of legislative, and not judicial cognizance.

I have not thought it necessary to decide the interesting question presented by the district attorney whether an exception introduced into an existing law could have the effect of invalidating the law.

The relator appeals to the court in the name of liberty. He claims that liberty is protected by the Constitution, which was enacted by the people themselves, and that none but the people, not even their agent the Legislature, has dispensing power over it. He claims that the Constitution itself, in article 13, § 1, requires that every judge before entering upon the duties of his office shall take an oath to support the Constitution of the United States and the Constitution of the state of New York, and that this means to support them even against the acts of the Legislature. In all this he is right. Such is the law, and such is the duty of all courts. What is the constitutional liberty which every judge is to protect? It is civil or political liberty. Man in a state of nature, as the eighteenth century philosophers were wont to say, has an inherent right, as a free moral agent, to act, think, and speak as he pleases. When he becomes a member of society, he necessarily surrenders a portion of that liberty in the interest of the rights of others and the welfare of society. The modicum of liberty, remaining after such surrender, is civil or political liberty. An act of the Legislature in the interest of the health, morals, or safety of the community operates within the field of the surrendered rights, and does not abridge civil liberty. If then the statute, forbidding the relator to employ in his candy factory minors under a certain age, and women more than 54 hours a week, is a measure in the interest of the welfare of society, it does not impair his civil liberty, although it does limit his right to contract for labor. I find this decided already by

authority, and, fully and sympathetically concurring in the reason by which the result was reached, I gladly follow the precedents.

The development of the industrial life of the nation, the pressure of women and children entering the industrial field in competition with men physically better qualified for the struggle, has compelled them to submit to conditions and terms of service which it cannot be presumed they would freely choose. Their liberty to contract to sell their labor may be but another name for involuntary service created by existing industrial conditions. A law, which restrains the liberty to contract, may tend to emancipate them by enabling them to act as they choose, and not as competitive conditions compel. All these considerations are for the Legislature, and for the Legislature alone. It is only where the statute controls conduct in matters plainly and obviously indifferent to the welfare of the public, or any portion thereof, that the courts can pronounce the act violative of civil liberty. Certainly this is not such a case.

The writ is dismissed, and the relator remanded to custody.