Dillon, J.
By writ of habeas corpus the applicant seeks release from arrest, charged with violating the act of May 31,1911 (102 O. L., 488). This act provides for a number of conveniences such ás *2 chairs, suitable and separate toilet and dressing rooms, water-closets, ventilation, etc., for female employes. Among other things provided for in this act,is the following:
“Females over eighteen years of age shall not be employed or permitted or suffered to work in or in connection with any factory, workshop, telephone or telegraph office, millinery, or dressmaking establishment, restaurant, or in the distributing or transmission of messages more than ten hours in any, one day, or more than fifty-four hours in any one week, but meal time shall not be included as a part of the work hours of the week or day, provided, however, that- no restriction as to the hours of labor shall apply to canneries or establishments. engaged in preparing for use perishable goods.”
Violation of this provision by any employer is punishable by a fine of not less than twenty-five dollars nor more than two hundred dollars. ' The applicant through her counsel claims that the foregoing provision of said act is void and unconstitutional and bases this contention upon three propositions:
First, that the freedom of the right to contract both on the part of an employer and on the part of an employe, as well as the right to enforce such contracts, are guaranteed to all the people by Sections 1 and 19 of the Bill of Eights of the Constitution of Ohio and also by Section 1 of the Fourteenth Amendment to the Constitution of the United States, and that any legislative act which limits this freedom of contract must fail, unless it shall appear to the court that such limitation is necessary for the public welfare, that is to say, for the protection of public health or safety or morals.
Second, that freedom of contract with reference to the salé and purchase of labor is as much protected as freedom of contract with reference to any subject or in any other respect.
Third, that the Legislature can not constitutionally make any arbitrary, artificial, fictitious or capricious classification so as to make an act apply to a certain person or persons engaged in some particular line of enterprise, while others coming-within the same general class are.exempt.
• It is well settled law not only of this state but of all the states ; of .the. United States, .that.it becomes the duty of a court to de *3 termine whether or not an aet in limitation upon individual rights.or affecting individual property is to be justified on the ground that it is reasonably necessary for the protection of public health, safety, morals or general welfare. Succinctly stated, this siipply means that all private right or property, liberty, etc., must yield to the general welfare.
Since, then, it is for the court to determine what is and what is not for the protection of the public health, safety, morals or general welfare, it is not surprising that we meet with much contrariety of decision. This variance is easily explained by a number of considerations. First, the age in which the decision was rendered, for it must be conceded that that which was not public welfare fifty years ago, under the then conditions of society, morals, necessities, and commercial conditions, may in this present age be considered public welfare. At a time when most people of this country worked for themselves and. industrial conditions were such that few women were engaged .in labor in factories, workshops, etc., it might easily be said that there was no public necessity or need of any legislation limiting the hours of their labor. At the present day, happily or. not, few men work for themselves and large industrial institutions have multiplied so that a large percentage of our people, both men and women, are compelled by industrial conditions to labor for others, and, therefore, public health, public welfare, public morals, as well as public safety, demand that these conditions be recognized as existing and decision be not rendered upon the bare, naked questions of purely private right.
This contrariety of decision also varies with the individual judge who interprets statutes in different parts of the country as well as in different ages. Judges differ as to their standard of ethics as well as to their views as to what constitutes public welfare.
It is not a yielding to any erroneous clamor of the day to observe that this nation has passed through an era of the greatest commercial and financial cupidity in the history of the world, and the inordinate competition and desire for commercial success has threatened to blunt the higher and more sacred' objects of living.
*4 Coming now to some of the decisions, one of the strongest cases which has been cited to this court in behalf of the invalidity of this law comes from our own state in the case of Palmer v. Tingle, 55 O. S., 423, and yet that case I consider easily distinguishable from the one at bar. In that case the Supreme Court held that the inalienable right of enjoying liberty and acquiring property, which is guaranteed by the first section of the Bill of Rights of the Constitution, embraces the right to be free in the enjoyment of our faculties, subject only to such restraints as are necessary for the common welfare. Further, that the judgment of the General Assembly as to whether restraint .of private right and the right to contract was for the general welfare was not conclusive, but that the court must see that it is for the general welfare. In that case the court considered that the act of April 13, 1894, giving a lien on the property of the owner to sub-contractors who had no contract with him was unconstitutional and void, and yet the general principles on which this case is decided here were announced in that case.
Again, in our own state the case of City of Cleveland v. Clements, 67 O. S., 197, is cited, in which the act of April 16, 1900, limiting the hours of daily service of workmen and mechanics-employed upon public works or work done for the state of Ohio, or any municipality thereof, to eight hours a day, was not for any public welfare, public health or public morals, and, therefore, was unconstitutional and void.
In the year 1895, the Supreme Court of Illinois in the ease of Ritchie v. People, 155 Ill., 98, held, emphatically, that the right to labor or employ and to make contracts in respect thereto, upon any terms as might be agreed upon, was a liberty and property right under the Constitution, and, therefore, a statute prohibiting women from working more than eight hours a day was unconstitutional. This decision of 1895, however, is completely modified and distinguished, if not practically overruled, in the case of Ritchie & Co. v. Wayman, 244 Ill., 509, where the court held that property rights may always be limited and regulated under the police power of the state when the public health, safety, morals and welfare so required, and, therefore, that the Woman’s Ten Hour Law of 1909 was a valid regulation.
*5 The oldest ease sustaining the validity of laws like the one in question here was decided by the Supreme Court of Massachusetts in 1876 in the case of Commonwealth v. Hamilton, 120 Mass., 383, wherein an act of that state prohibiting the employment of all persons under the age of eighteen and of all women from laboring in any manufacturing establishment more than sixty hours per week was valid.
The state of Nebraska in 1902 speaks to the same effect in the case of Wenham v. State, 65 Neb., 394, wherein the act of that state to regulate and limit the hours of employment of females in manufacturing, mechanical, and mercantile establishments, etc., was held to be valid on the ground that private right must yield to public welfare.
To the same effect is the case of State v. Buchanan, 29 Wash., 602.
The Supreme Court of the United States has spoken at least twice upon this question, the first time apparently adversely to the decision here rendered, in the case of Lochner v. New York, 129 U. S., 45, where it was held that the right to make a contract in relation to one’s business is a part of the liberty protected by the Fourteenth Amendment, and this included the right to purchase and sell labor, and that there was no reasonable ground on the score ot public health, etc., for interfering with the liberty of the person or right of free contract by determining the hours of labor in the occupation of a baker. This law applied to employes generally in bakeries, but this case is distinguished, if not practically much modified, in the later case of Muller v. State of Oregon, 208 U. S., 412, decided in 1908, in which the court held the Oregon statute constitutional. This statute provided that no female should work in certain establishments more than ten hours a day. The particular ease was one in which the employment was in a laundry, and the discussion of the court in that case is referred to and adopted here as a part of this decision. And as the Supreme Court of the United States did in that case, this court also takes judicial cognizance of matters of general knowledge such as the fact of woman’s physical structure, and that the performance of maternal functions places her at a disadvantage, which justifies a difference *6 in legislation in regard to some of the burdens which rest upon her. Healthy mothers are essential to vigorous offspring and the physical well-being of woman is an object of public interest and welfare. The regulation of her hours of labor, therefore, falls within the police-power of the state, and a statute directed exclusively to such regulation does not conflict with due process of law or equal protection clauses of the Fourteenth Amendment. The said court further held that it was the right of a state to regulate the working hours of women.
Only a year ago the Supreme Court of Michigan in .the case of Withey v. Bloem, 163 Mich., 419, held constitutional the statute of that state providing that no females shall be employed in any factory, mill, store, shop or warehouse more than ten hours in any one day or fifty-four hours a week, and as also pertinent here, that same case holds that the exemption of women who work where perishable products are preserved did not invalidate the act on the ground of class legislation.
The act in question here exempts canneries and the cases where perishable goods are being handled. These two occupations are but temporary and not permanent, and the necessity for such exemption makes the same reasonable.
The Ohio act involved here applies to any factory, workshop, telephone or telegraph office, millinery or dressmaking establishment, restaurant -or the distributing or transmission of messages. It may be that judicial decision later on may discover some mercantile establishment not included in the foregoing, and it may be a question whether, it does include every mercantile establishment which ought to be in the act, yet I am not inclined to strike down the law upon such speculation. If the law needs broadening, it will be better to sustain it and permit its correction in due season as its interpretation may suggest.
The act, as I interpret it, does not seem arbitrary and capricious. Nor does it seem to have been enacted for the purpose of hampering one class of employers and in favor of another class. The classification is not artificial as claimed. The act seems in good faith to attempt to reach all cases where the remedy was needed. The number of hours of the limitation are reasonable in this day and age. The restrictions upon the laboring woman *7 with reference to her hours of contract are not absolute, and apply only to .her employment at the same place. She may do as she pleases with her work and labor after those hours are covered. •
I am of opinion, therefore, both upon authority and principle, that the act is not unconstitutional, and the applicant, therefore, must be remanded.